2024 IL App (2d) 230534-U
No. 2-23-0534
Order filed January 30, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 23-CF-646 |
| LATRELL D. JONES, | ) ) | Honorable Marcy L. Buick, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Hutchinson and Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*: As State presented no specific articulable facts showing that no condition or combination of conditions of pretrial release could mitigate the threat posed by the defendant, trial court's finding that the State had presented clear and convincing evidence on this issue was against the manifest weight of the evidence.

¶ 2    On November 25, 2023, the defendant, Latrell D. Jones, was arrested and charged with aggravated battery causing great bodily harm (720 ILCS 5/12-3.05(a)(1) (West 2022)), a class 3 felony, and mob action (*id.* § 25-1(a)(1)), a class 4 felony. The circuit court of De Kalb County granted the State's verified petition to deny the defendant's pretrial release pursuant to section

110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)). The defendant appeals.

¶ 3                                    I. BACKGROUND

¶ 4     The following facts are drawn from two police synopses of the incident (for the defendant and one of his co-defendants, Darrell Jones; the trial court reviewed both, at the request of the parties) and the defendant's pretrial risk assessment.   Those items were the only evidence considered by the trial court in deciding whether the defendant should be detained while awaiting trial.

¶ 5     On November 25, 2023, at about 11 p.m., the De Kalb police received a call saying that four or five men were "causing issues and potentially arguing and fighting with someone."   After arriving at the scene, the police interviewed Patrick Rance, who had visible injuries to his face and complained of injuries to his rib area.   Rance said he was "jumped" by four men whom he did not know but who were known to Alexis Brinson, a woman who was pregnant with Rance's child.   He described their car as a white sedan with tinted windows.   A car matching that description was seen leaving as the police arrived.   The police observed a traffic violation and stopped the car. Rance was examined by medics and transported to a hospital, where he was found to have two broken ribs, a collapsed lung, and a lacerated liver.

¶ 6     The car stopped by the police contained Darshawn Bond, Darrell Jones, the defendant, and a juvenile, all of whom were taken into custody.   The defendant declined to speak with police, but one of the others, Jones, agreed to waive his *Miranda* rights.   Jones told the police that the four of them had been in Chicago.   They got a call from Brinson, who was "worried."   They drove to De Kalb and eventually arrived at 819 Russell Road, where they met Rance.   Rance punched Bond and they all began to fight.   According to Jones, the four of them left shortly after that.

¶ 7 The fight was captured on surveillance video, which the police viewed. The police synopses summarized the footage of the fight as follows: "the four males from the traffic stop arrive together, and begin to batter [Rance] outside of 819 Russell Rd. once he exits the building." The video itself was not produced by the State or reviewed by the trial court.

¶ 8 The pretrial risk assessment stated that the defendant had no criminal history. He was employed part-time by Amazon and lived with his mother and younger brother (Jones) in Chicago. He was able to travel to De Kalb for court dates. According to the Revised Virginia Pretrial Risk Assessment Instrument, the defendant had a score of 0 out of a possible 14, meaning that there was a 96% probability that he would appear for all future hearings and would not reoffend during the pendency of the case. The assessment found that the defendant was appropriate for pretrial release and recommended that, if released, he be subject to the following conditions: pretrial supervision, no contact with Rance, and the surrender of any firearms in his possession.

¶ 9 At the defendant's first court appearance on Sunday, November 26, 2023, the State filed a petition to detain him under section 110-6.1 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)). The trial court read the defendant the charges, advised him of his rights, and appointed counsel for the purpose of the current hearing and the pretrial detention hearing. The trial court stated that the latter hearing would not be held until the next day at 1 p.m. The defendant objected to the delay but the trial court entered the continuance over that objection.

¶ 10 The State's petition to detain was heard the next day, November 27. The State re-proffered the two police synopses, saying that the video showed the four co-defendants beating Rance for "over a minute." The parties agreed that the four had traveled from Chicago in response to a call from Brinson. The State argued that, although the four men were all young and had no criminal history, their alleged offense and the fact that they "came out to beat on a person" showed that they

posed a threat to the community as well as to Rance. As for why conditions of release would not mitigate this threat, the State asserted generally that "defendants don't follow court orders" and argued that the four co-defendants had shown that they were unwilling to follow "societal laws" because they had disregarded those laws in committing the offense.

¶ 11 The defense argued that the State had not shown that the defendant committed a detainable offense, because there was evidence—Jones's statements to the police—that the co-defendants acted in self-defense after Rance initiated the fight. The defense pointed out that the State did not present any evidence about who started the fight. On the issue of his alleged dangerousness, the defense went through each of the statutory factors to be considered in making that determination. As to the first factor, although the nature of the offense could support a finding of dangerousness, the legislature clearly did not intend that single factor to be dispositive, or else it would have drafted the statute so as to have the analysis stop there. One other factor, the age and physical condition of the victim (*i.e.,* his injuries) could also support pretrial detention. However, all of the remaining factors, including the defendant's young age, his lack of any criminal history, his employment and stable housing, that he was not known to have access to any weapons, and his low score on the risk assessment, supported a finding that he posed no special risk to the community. Without explicitly conceding that the defendant could be seen as posing a danger to Rance, the defense argued that releasing him with conditions such as an order to have no contact with Rance would mitigate any risk. The defense reminded the trial court that the statutory presumption was that the defendant should be released, and that the State bore the burden of overcoming that presumption by clear and convincing evidence.

¶ 12 The trial court granted the State's petition. As to dangerousness, it found that the the defendant's pretrial release would pose "a real and present threat to the safety of a person or

persons or the community," including but not limited to Rance, "based on the specific articulable facts of the case which are found in the synopsis filed on November 26, 2023." The trial court also found that no conditions of release could mitigate that threat because of the nature of the offense (an aggravated battery) and the seriousness of the injuries to Rance. The defendant filed a timely notice of appeal.

¶ 13                                    II. ANALYSIS

¶ 14    This appeal is brought pursuant to Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act).[1] See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date of Act as September 18, 2023). The Act abolished traditional monetary bail in favor of pretrial release on personal recognizance or with conditions of release. 725 ILCS 5/110-1.5, 110-2(a) (West 2022).

¶ 15    In Illinois, all persons charged with an offense are eligible for pretrial release. *Id.* §§ 110-2(a), 110-6.1(e). Pretrial release is governed by article 110 of the Code as amended by the Act. *Id.* § 110-1 *et seq.* Under the Code, as amended, a defendant's pretrial release may only be denied in certain statutorily limited situations. *Id.* §§ 110-2(a), 110-6.1(e).

¶ 16    Upon filing a verified petition requesting denial of pretrial release, the State has the burden to prove, by clear and convincing evidence, that: (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense (*id.* § 110-6.1(e)(1)); (2) the defendant's pretrial release would pose a real and present threat to the safety of any person or persons or the

---

[1]The Act is also sometimes known as the "SAFE-T Act." Neither of those names is official. *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1.

community (*id.* § 110-6.1(e)(2)); and (3) no condition or combination of conditions on release can mitigate the real and present threat to the safety of any person or the community or prevent the defendant's willful flight from prosecution (*id.* § 110-6.1(e)(3)).

¶ 17    In his appeal, the defendant argues that the delay in hearing the State's petition to detain (during which time he remained in custody) violated the Code. He also argues that the State did not meet its burden to show, by clear and convincing evidence, that the three statutory requirements for pretrial detention were met. "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services,* 2023 IL 127712, ¶ 74.

¶ 18    The parties acknowledge that we review the court's decision to deny pretrial release under a bifurcated standard. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. Specifically, we review under the manifest-weight-of-the-evidence standard the court's factual findings as to dangerousness, flight risk, and whether conditions of release could mitigate those risks. *Id.* A finding is against the manifest weight of the evidence only where it is unreasonable or not based on the evidence presented. *Id.* We review for an abuse of discretion the trial court's ultimate determination regarding pretrial release. *Id.* An abuse of discretion also occurs only when the trial court's decision is unreasonable. *Id.*

¶ 19    Because the State bears the burden to present clear and convincing evidence of all of the statutory requirements in order to justify the pretrial detention of a defendant, a deficiency in the evidence on any one requirement is fatal. See 725 ILCS 5/110-6.1(e) (West 2022). Here, we conclude that the State did not meet its burden to show that no conditions of release could mitigate the risk posed by the defendant's pretrial release.

¶ 20    The question of whether there were other measures besides incarceration that could have mitigated the risk posed by the defendant's release depends in part on the nature of that risk, so we begin by analyzing that risk based on the evidence submitted by the State. In arguing that the defendant posed "a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case" (*id.* § 110-6.1(g)), the State pointed only to the fact that the four young men deliberately "came out [from Chicago] to beat on" Rance in response to a call from Brinson. However, while that fact may support a conclusion that the defendant posed a threat to Rance, it does not indicate that the defendant posed any particular threat to the community at large, as he and his co-defendants appeared to target a specific person and were not simply seeking to commit random violence. The State did not present any other evidence that the safety of the community would be threatened by the defendant's pretrial release. The defendant did not live in the community or nearby and was not known to have caused any other trouble there.

¶ 21    On this record, the trial court could properly conclude that the defendant posed "a real and present threat to the safety" of Rance. However, given that the State did not present evidence that the defendant's release would endanger the wider community, the trial court's finding that the defendant posed a "real and present threat" to the safety of the community lacked a basis and was against the manifest weight of the evidence.

¶ 22    Because the evidence showed that any potential threat posed by the defendant's release was solely to Rance, the proper question was whether that specific threat could be mitigated through the imposition of one or several conditions of release. We now consider whether the trial court correctly resolved that question, taking into account the statutory presumption in favor of pretrial release.

"All defendants shall be presumed eligible for pretrial release, and the State shall bear the

burden of proving by clear and convincing evidence that:

***

(3) no condition or combination of conditions set forth in subsection (b) of Section 110-10

of this Article can mitigate *** the real and present threat to the safety of any person or

persons or the community, based on the specific articulable facts of the case ***." *Id*.

§ 110-6.1(e).

Section 110-10 governs the conditions of pretrial release. Subsection 110-10(a) lists conditions

that must be imposed in any such release, including attendance at court dates and obedience to

court orders, not committing any new crime, and, for certain offenses, surrendering any firearms

and FOID card. Subsection 110-10(b) sets out other possible conditions of release that may be

imposed, but only as necessary:

"Additional conditions of release shall be set only when it is determined that they are

necessary to ensure the defendant's appearance in court, ensure the defendant does not

commit any criminal offense, ensure the defendant complies with all conditions of pretrial

release, prevent the defendant's unlawful interference with the orderly administration of

justice, or ensure compliance with the rules and procedures of problem solving courts." *Id.*

§ 110-10-(b).

Further, any such additional conditions must be individualized to each defendant, must be the least

restrictive means available to mitigate the risk posed by the defendant, cannot include punitive

measures, and cannot include mandatory rehabilitative services unless such services are necessary

to prevent pretrial misconduct. *Id.* Such additional conditions include, as relevant here, refraining

from "approaching or communicating with particular persons," refraining from "going to certain

described geographic areas or premises," and supervised monitoring with or without an electronic monitoring device. *Id.*

¶ 23   We agree with the defendant that the State did not present evidence as to why Rance's safety could not be adequately protected through the imposition of such conditions. Although the State asserted broadly that "defendants don't follow court orders," this type of sweeping generalization in no way meets the statutory requirement that the imposition of pretrial detention must be based on "the specific articulable facts" of the individual case. The State's alternate assertion that the defendant demonstrated his unwillingness to follow societal rules simply by committing the offense is no better. The State presented no evidence that the defendant would not follow court orders or was likely to reoffend. To the contrary, the evidence showed that the defendant had no criminal record and was, to all appearances, a law-abiding citizen until the events of this case. Further, the pretrial risk assessment identified him as very likely to obey court orders, appear as required, and not reoffend during the pendency of the case.

¶ 24   Section 110-6.1(h)(1) of the Code requires the trial court, if ordering the pretrial detention of a defendant, to "make a written finding summarizing the court's reasons for concluding that the defendant should be denied pretrial release, including why less restrictive conditions would not avoid a real and present threat to the safety of any person *** based on the specific articulable facts of the case." *Id.* § 110-6.1(h)(1). Here, the sole written explanation for the trial court's finding was a form order with a checked box next to each of the following phrases: "[n]ature and circumstances of the offense(s) charged," "[t]he identity of any person or persons to whose safety the Defendant is believed to pose a threat, and the nature of the threat," and "[t]he age and physical condition of any victim or complaining witness." It is doubtful that merely checking such boxes, with no other explanation (not even a reference to the report of proceedings), could qualify as the

"written finding summarizing the court's reasons" that is required by the statute. Even if we were to look beyond this paltry written record to the transcript of the pretrial detention hearing, however, it is clear that the trial court erred in finding that the State had met its burden of proof.

¶ 25    In the trial court's verbal ruling, it did not list any of the conditions of pretrial release that could be imposed or discuss why any combination of them would not mitigate the potential threat to Rance's safety. Instead, the trial court stated that its determination on this issue was based on the nature of the crime (*i.e.*, aggravated battery) and the extent of the injuries inflicted on Rance, which the trial court stated showed that offense involved a "prolonged" confrontation and was not simply "a one-off, for example, punch to the head."

¶ 26    We note that the defendant's battery qualified to be charged as an aggravated battery because it caused substantial bodily harm, and so the serious injuries to Rance were already accounted for in the charge itself. The record thus shows the nature of the one of the charged offenses—a battery causing substantial bodily harm—was the trial court's sole reason for finding that no conditions of pretrial release could mitigate the threat to Rance's safety.

¶ 27    The words of Justice Lampkin in *People v. Stock,* 2023 IL App (1st) 231753, a case in which the defendant similarly had no criminal history and scored very low on a pretrial risk assessment, and where the trial court similarly based its decision to deny pretrial release solely on the nature of the charged offense (an aggravated battery), are instructive here:

    "[L]ogically, the bare allegations that defendant has committed a violent offense are not sufficient to establish this element [that no less restrictive conditions of release would serve to mitigate the threat to someone's safety posed by the defendant]. Our legislature has mandated that all criminal defendants are eligible for pretrial release. 725 ILCS 5/110-6.1(e) (West 2022). Thus, even those accused of violent offenses are presumed eligible for

pretrial release, and it is the State who must justify their pretrial detention. 725 ILCS 5/110-6.1(e) (West 2022). This is not to say that alleged facts stating the basic elements of an offense are not relevant or are not part of the proof that no conditions could mitigate the threat posed by a defendant. But more is required. If the base allegations that make up the *sine qua non* of a violent offense were sufficient on their own to establish this element, then the legislature would have simply deemed those accused of violent offenses ineligible for release. In other words, if alleging that defendant discharged a firearm and struck a person was sufficient to show that no conditions of pretrial release could mitigate any threat, then no defendant charged with aggravated battery/discharge of a firearm would ever be eligible for pretrial release. That is clearly at odds with the statute's presumption of eligibility for all defendants, and the plain language of article 110 of the Code indicates that more is required. See *People v. Ramirez*, 2023 IL 128123, ¶ 13 ('The best evidence of legislative intent is the statutory language itself, which must be given its plain and ordinary meaning.')." *Id.* ¶ 18.

See also *People v. Atterberry,* 2023 IL App (4th) 231028, ¶ 18 ("the fact that a person is charged with a detainable offense is not enough to order detention, nor is it enough that the defendant poses a threat to public safety").

¶ 28 Here, the State did not meet its burden to prove by clear and convincing evidence that no condition or combination of conditions of pretrial release could mitigate any threat to Rance's safety posed by the defendant, and thus the trial court's finding was against the manifest weight of the evidence. In so concluding, we do not minimize the seriousness of the violent felonies with which the defendant is charged. However, "[i]f the Act's presumption that all persons charged

with an offense are eligible for pretrial release is to have any meaning, more than is presented in this record must be required." *People v. Finch,* 2023 IL App (2d) 230381-U, ¶ 19.

¶ 29    Because the State's failure to show that no conditions of pretrial risk could mitigate any threat posed by the defendant's release is dispositive, we do not reach the other issues raised in this appeal.

¶ 30                                  III. CONCLUSION

¶ 31    For the reasons stated, we reverse the order of detention and remand for a hearing on the appropriate conditions of pretrial release under section 110-10 of the Code.

¶ 32    Reversed and remanded.