2024 IL App (2d) 240208-U
No. 2-24-0208
Order filed June 21, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 24-CF-466 |
| KEVIN D. LEE, | ) ) ) | Honorable Salvatore LoPiccolo, Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Hutchinson concurred in the judgment.
Justice Kennedy dissented.

**ORDER**

¶ 1   *Held*:   The circuit court's determination that defendant committed detainable offenses was not erroneous; however, the court abused its discretion in finding that no condition or combination thereof could mitigate the threat defendant posed to the community. Affirmed in part, reversed in part, and remanded.

¶ 2   Defendant, Kevin D. Lee, requests that we vacate the circuit court's order granting the

State's petition to deny him pretrial release pursuant to Public Act 101-652, § 10-255 (eff. Jan. 1,

2023), commonly known as the Pretrial Fairness Act (Act).[1] See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). Specifically, defendant contends that the State failed to meet its burden of proving that he committed a detainable offense and that any threat posed by defendant's release could not be mitigated by electronic or GPS monitoring with restrictions on his access to children. For the following reasons, we affirm in part and reverse in part the circuit court's order and remand for a new hearing on appropriate conditions of pretrial release.

¶ 3                              I. BACKGROUND

¶ 4      Defendant was charged on March 7, 2024, with burglary from a school/day care (720 ILCS 5/19-1(a) (West 2022) (Class 1)), sexual exploitation of a child (*id.* § 11-9.1(a-5) (Class 4)), and grooming (*id*. § 11-25(a) (Class 4)). The charges stem from an incident on February 26, 2024, inside a youth locker room.

¶ 5      On March 7, 2024, the State filed a verified petition to detain defendant pursuant to section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2022)), as amended by the Act. The State alleged that defendant was charged with detainable offenses (counts 2 and 3) and that his pretrial release posed a real and present threat to the safety of any person or the community. *Id.* § 110-6.1(a)(5). It further asserted that the circuit court should consider defendant's criminal history including, a

---

[1]Public Act 101-652 (eff. Jan. 1, 2023), which amended article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1 (West 2022)), has been referred to as the "Pretrial Fairness Act" and the "Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act"; however, neither title is official. *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1.

past Du Page County case (No. 18-CM-1105), wherein defendant pleaded guilty to disorderly conduct.

¶ 6    The same day, a hearing was held on the State's petition. The State argued, based on a police synopsis and defendant's prior criminal history, that he committed detainable offenses and that defendant was a danger to the community, specifically minors. The State proffered that, on February 26, 2024, four minors reported to their coach and Norris Recreation Center staff that an older man repeatedly entered the 18-and-under locker room and was "acting creepy." They also related that defendant was acting suspicious, did not appear to have a purpose in the locker room, was not changing or utilizing the lockers, was older than the posted age limit, and they had not seen defendant in the pool area. When the minors reported their suspicions to the front desk staff, they observed defendant leaving.

¶ 7    M.M., a 10-year-old male, was in the youth locker room at the same time as defendant. He told police that he was wearing a towel around his waist, such that his Speedo beneath was not visible when he entered the changing area after swim practice. While M.M. was in the changing area, he observed defendant move back and forth between the sink and hand dryers; M.M. felt that defendant was trying to look at him in the hand-washing mirrors. Afterward, defendant placed his bag on the same bench where M.M. was trying to change beneath his towel. Defendant then stated to M.M., "that's okay, you don't need to cover with a towel." Defendant then noted that he got something on his hands and moved back to the sink area to rewash his hands. He continued to occasionally look at M.M. in the mirror while M.M. tried to change.

¶ 8    Police identified defendant after posting security footage online. Police then encountered defendant outside Carpentersville Middle School, where defendant was a coach and teacher. When questioned by police, defendant admitted to being at the recreation center. He also allowed police

to search his phone, where they found GPS directions to the Norris Recreation Center and other recreation center locations on February 26, 2024. Defendant stated that he looked up swimming practice schedules at various locations prior to the incident. He entered the recreation center without paying and without a membership, and he lingered in the locker rooms for approximately two hours. He also admitted that he was attracted to prepubescent males, and his intent upon entering the recreation center was to linger inside the boys' locker room in the hopes of seeing naked minors. Defendant also admitted to telling M.M., "that's okay, you don't need to cover with a towel," and he agreed that his statements were made for his own sexual gratification because he was aroused at the thought of M.M. exposing himself.

¶ 9     The State also proffered the facts of defendant's prior Du Page County case. In that case, defendant pleaded guilty to disorderly conduct after he entered a park district bathroom and attempted to film a male minor while he changed in an adjacent bathroom stall. The minor confronted defendant and exited the bathroom before changing. When questioned by police, defendant admitted that he was curious about boys in puberty and observing their genital area. He also indicated that he was watching swim practice and would enter the locker room after a minor so he could look at them while they changed or urinated.

¶ 10     Based on this proffer, the State argued that defendant committed detainable offenses and that he was a danger to all children in the community, but specifically male minors because defendant was "actively going out into the community trying to hunt down children, and he is finding them." The State asserted that defendant "greatly disturbed" M.M. and "terrified" the minor in case No. 18-CM-1105. Finally, the State asserted that no conditions of release would mitigate the real and present threat that defendant posed because the "[c]ourt cannot possibly restrict this defendant from every place that children would be, every public bathroom, every

swimming pool, [or] every park district building." The State asserted that it was impossible for the court to monitor defendant's behavior.

¶ 11    Defense counsel argued that defendant lived in South Elgin with his parents, had been employed as a science teacher for a year, and was a substitute teacher before that. There were no allegations from Carpentersville Middle School regarding inappropriate behavior with students but, regardless, counsel noted that, "he probably is not going to have a job at this school."

¶ 12    Referencing the present case, counsel argued that, based on *In re Ryan B*., 212 Ill. 2d 226, (2004), and the ordinary meanings of entice, persuade, and coerce, the State failed to show that defendant's statement established by clear and convincing evidence that the proof was evident or presumption great that defendant committed the offenses of sexual exploitation of a child and grooming. Moreover, defense counsel asserted that any claim that the minors here were "terrified" was not supported by the synopsis and was speculation. Regarding case No. 18-CM-1105, defendant told police that he had never made physical advances toward any of the minors he encountered, never looked inappropriately at minors during his Boy Scout outings or at Centennial School or St. Charles High School, and he never exposed himself to a minor. Defendant also provided his cell phone and laptop to police and a data extraction did not uncover any inappropriate material. Defense counsel concluded by arguing that defendant should be placed on GPS or electronic home monitoring (EHM).

¶ 13    Based on the proffered evidence, the circuit court ordered defendant's continued detention. The court noted that based on the verified petition, the proffered evidence, and after having considered the factors relevant in assessing dangerousness, the State proved by clear and convincing evidence that the proof was evident and presumption great that defendant committed detainable offenses. Specifically, the court found that defendant's statement to M.M., coupled with

his intention for entering the youth locker room for his own sexual arousal or gratification, evidenced that defendant was "attempting to entice and is enticement when he's telling [M.M.] 'That's okay. You don't need to cover with a towel.' "

¶ 14    Additionally, the court found that the State proved by clear and convincing evidence that defendant posed a real and present threat to the safety of the community. Specifically, defendant's statements to police that he snuck into the Norris Recreation Center hoping to see male minors naked, his premeditation in looking at the swim schedule, and defendant's continued intention to see minors nude, convinced the court that defendant was a danger.

¶ 15    Regarding conditions of release, the court stated that it did not "know if [it] ha[d] the power to take away [defendant's] job," by ordering that he remain home and not have contact with minors. The court refused to allow defendant to go back to a "fertile environment," *i.e.*, a school, where children would be present. However, the court noted that, "[i]f [it] knew for sure that he did not have a job, [EHM] would be the condition that [it] would use." Based on this assessment, the court concluded that no condition or combination of conditions would mitigate the real and present threat defendant posed to the community.

¶ 16    Thereafter, defendant timely appealed, using the form notice promulgated under Illinois Supreme Court Rule 606(d) (eff. Oct. 19, 2023). On May 3, 2024, defendant filed a memorandum in support of his appeal, and, on May 23, 2024, the State responded.

¶ 17                                    II. ANALYSIS

¶ 18    On appeal, defendant argues that the State failed to meet its burden of proving that the proof was evident or presumption great that he committed sexual exploitation of a child and grooming and that no condition or combination thereof could mitigate his threat to the community.

He requests that we reverse his detention order. We affirm in part, reverse in part, and remand for a new hearing on appropriate conditions of pretrial release.

¶ 19    The Act amended the Code by abolishing traditional monetary bail in favor of pretrial release on personal recognizance or with conditions of release. 725 ILCS 5/110-1.5, 110-2(a) (West 2022). Section 110-6.1(e) of the Code presumes that all persons charged with an offense are eligible for pretrial release. *Id.* § 110-6.1(e). However, a defendant's pretrial release may be denied if he or she commits a qualifying offense. *Id.* §§ 110-2(a), 110-6.1. Upon filing a timely verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that: the proof is evident or the presumption great that the defendant has committed a detainable offense (*id.* § 110-6.1(e)(1)), the defendant's pretrial release poses a real and present threat to the safety of any person or the community (*id.* §§ 110-6.1(a)(1)-(7), (e)(2)), and less restrictive conditions would not avoid the real and present threat to the safety of any person or the community (*id.* § 110-6.1(e)). "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74. Clear and convincing evidence is "more than a preponderance of the evidence and not quite approaching the beyond-a-reasonable-doubt standard necessary to convict a person of a criminal offense." *People v. Craig*, 403 Ill. App. 3d 762, 768 (2010).

¶ 20    If the circuit court finds that the State proved a real and present threat to the safety of any person or the community, the circuit court must determine which pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(a). However, if the court determines that the defendant should be

detained, the court must make written findings summarizing the reasons for detention, including why less restrictive conditions would not avoid a real and present threat to the safety of any person or the community based on the specific articulable facts of the case. *Id.* § 110-6.1(h)(1).

¶ 21    Our standard of review is twofold. We review the circuit court's factual findings regarding the prerequisites to detention under the manifest-weight-of-the-evidence standard. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. A finding is against the manifest weight of the evidence only where the finding is unreasonable. *Id.* We review for an abuse of discretion the circuit court's ultimate determination regarding pretrial release. *Id*. An abuse of discretion occurs only when the circuit court's decision is unreasonable. *Id.* "[W]e consider not just whether the ultimate result is within the bounds of reason, but also whether the trial court applied proper criteria to reach that result." *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 12 (citing *Paul v. Gerald Adelman & Associates, Ltd*., 223 Ill. 2d 85, 99 (2006)).

¶ 22                              A. Detainable Offenses

¶ 23    Defendant asserts first that the State failed to meet its burden to establish by clear and convincing evidence that the proof was evident and presumption great that he committed sexual exploitation of a child and grooming (based on the same). He elaborates that there was insufficient evidence because the offenses required more than a singular statement to M.M. while he was trying to change. We find that defendant's statement, within the greater context of the case, was sufficient, and the circuit court was not unreasonable in concluding that defendant committed detainable offenses.

¶ 24    To be detained for sexual exploitation of a child, the State must show by clear and convincing evidence that the proof was evident and presumption great that defendant "knowingly entice[d], coerce[d], or persuade[d] a child to remove the child's clothing for the purpose of sexual

arousal or gratification of the person or the child, or both." 720 ILCS 5/11-9.1(a-5) (West 2022). Moreover, to be detained for grooming, the State was required to show by clear and convincing evidence that the proof was evident and presumption great that defendant knowingly performed an act in person "to seduce, solicit, lure, or entice, or attempt to seduce, solicit, lure, or entice, a child" to commit any sex offense as defined in Section 2 of the Sex Offender Registration Act (herein, sexual exploitation of a child). *Id.* § 11-25(a).[2]

¶ 25    Our supreme court has defined "coerce," "persuade," and "entice," based on their plain and ordinary meanings, as follows: (1) entice: " 'to draw on by arousing hope or desire[]' "; (2) coerce: " 'to restrain, control, or dominate, nullifying individual will or desire (as by force, power, violence, or intimidation)[]' "; and (3) persuade: " 'to induce by argument, entreaty, or expostulation into some mental position (as a determination, decision, conclusion, belief) *** to use persuasion upon: plead with: URGE.' " *In re Ryan B*., 212 Ill. 2d 495, 232 (2004) (quoting Webster's Third New International Dictionary 757, 439, 1687 (1993)).

---

[2]The above definition of grooming reflects how the parties referenced the charges in the circuit court and on appeal. However, in the complaint, defendant was charged with "knowingly perform[ing] an act in person in order to seduce, solicit, lure or entice, or attempt to seduce, solicit, lure , [sic] or entice a child, *to otherwise engage in any unlawful sexual conduct with a child*, being that defendant spoke to minor M.M. and encouraged M.M. to disrobe in front of defendant." (Emphasis added). See *id*. § 25(a). Any argument regarding the difference between the parties' arguments and the charging instrument have been forfeited. See *People v. Harding*, 2012 IL App (2d) 101011, ¶ 16 (failure to raise and issue in the circuit court and in a posttrial motion, forfeits review on appeal).

¶ 26    In *Ryan B.*, the court found that a 14-year-old defendant was not guilty beyond a reasonable doubt of sexual exploitation of a child (8-year-old J.B.) after he asked J.B. to lift her shirt so he could see her "boobs." *In re Ryan B*., 212 Ill. 2d at 236. The court determined that defendant's actions did not constitute coercing, persuading, or enticing J.B. to disrobe based on the plain language of those terms. Instead, the court found that something more than a simple request is required, something like: "repeatedly request[ing], badger[ing] or beg[ing] J.B. to lift her shirt, or explicitly or implicitly threaten[ing] J.B. into lifting her shirt." *Id.* at 233-34. Moreover, the court concluded that, although the age difference between the parties was a relevant factor to consider, here, the age difference between the parties (six years) did not warrant a presumption that J.B. felt intimidated into complying with defendant's request. However, the court concluded that an age difference "certainly could be dispositive if the offender was an adult or a person in a position of authority over the victim." *Id.* at 235.

¶ 27    Upon review, we find that it was reasonable for the court to conclude that defendant committed detainable offenses here. The circuit court did not find, nor do we believe, that the evidence showed that defendant coerced M.M. Instead, the court found that defendant was enticing M.M. to disrobe. Giving the terms "persuade," and "entice" their plain and ordinary meaning, we conclude that it was not against the manifest weight of the evidence for the court to conclude that defendant enticed or persuaded M.M. to disrobe. Importantly, here, context matters. Defendant was in a prohibited location, the youth-only locker room, and lingered for nearly two hours. During that time, defendant, a 24-year-old, told M.M., a 10-year-old, "that's okay, you don't need to cover with a towel." Specifically, defendant's statement ("that's okay") evidenced his intent and constituted an attempt to assuage M.M.'s suspicions or discomfort from witnessing defendant repeatedly stare at him in the bathroom mirrors in order to urge M.M. to change without his towel

covering himself. This is particularly concerning considering the significant age difference and power differential between defendant and M.M. Additionally, defendant admitted to police that he told M.M. that he did not need to cover with a towel in the hopes that M.M. would expose himself to defendant—*i.e.* defendant assuaged M.M.'s concerns and hoped to urge him to change without covering himself. Accordingly, the circuit court's finding was not against the manifest weight of the evidence.

¶ 28                                B. Conditions of Release

¶ 29    Next, defendant argues that the State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions could mitigate defendant's threat to the community, because defendant could have been placed on EHM with additional conditions precluding him from associating with or being present around minors.

¶ 30    Section 110-10(b) of the Code authorizes the circuit court to impose a nonexhaustive list of conditions for pretrial release. Importantly, possible conditions include that a defendant (1) "[r]efrain from approaching or communicating with particular persons or classes of persons;" (2) "[r]efrain from going to certain described geographic areas or premises;" (3) "[b]e placed under direct supervision of the Pretrial Services Agency, Probation Department or Court Services Department in a pretrial home supervision capacity with or without the use of an approved electronic monitoring device;" and (4) any other reasonable conditions so long as these conditions are the least restrictive means to "ensure the defendant does not commit any criminal offense, ensure the defendant complies with all conditions of pretrial release, prevent the defendant's unlawful interference with the orderly administration of justice, or ensure compliance with the rules and procedures of problem solving courts," are individualized, and follow national best

practices detailed in the Pretrial Supervision Standards of the supreme court. 725 ILCS 5/110-10(b)(3)-(5) (West 2022).

¶ 31    Here, the court considered placing defendant on house arrest or EHM but noted that, by completely restricting defendant's movements, he would be ending defendant's employment as a teacher. Further, it noted that it "d[id]n't know that [it] had the power to take away [defendant's] job" by ordering EHM with a restriction that he was not to frequent any schools, including the school where he was employed. However, the court stated multiple times that, if it knew defendant would not be allowed to work at the school, EHM "would be the condition that [it] would use." Based on this analysis, the court found that detention was the only appropriate means to mitigate the threat posed by defendant.

¶ 32    The totality of the circuit court's comments evince that it failed to consider and apply section 110-10(b) in finding that no conditions could mitigate the threat defendant posed to the community. Section 110-10(b) expressly provides that the circuit court can preclude defendant from approaching or communicating with minors and allows the court to prohibit defendant from frequenting certain geographic areas or premises, like schools, recreation centers, or park districts. The statute does not prohibit the court from imposing conditions that impact employment or have natural employment consequences, so long as the conditions imposed are individualized and the least restrictive means to ensure defendant's compliance with pretrial release. In fact, defendant's detention surely had an impact on his employment status. Nonetheless, the court erroneously believed that it could not restrict defendant's access to minors and the areas they frequent because of defendant's status as a teacher and, thus, it detained defendant. This was an abuse of discretion. It was unreasonable for the circuit court to fail to impose conditions, despite its insistence that it would choose EHM, if it could ensure that defendant was not employed at the school. Simply

stated, the court could ensure that defendant was prohibited from entering school grounds (even the school that employed defendant) and other recreation centers, and from communicating with or approaching minors. The court's apparent misunderstanding regarding the collateral consequences of pretrial release cannot be overlooked. Accordingly, the circuit court's finding that defendant's continued detention was necessary to avoid a real and present threat to the safety of the community was an abuse of discretion, and we reverse and remand for a hearing on appropriate conditions of pretrial release. On remand, however, nothing in our decision precludes the court from again concluding that no condition or combination of conditions of release could mitigate defendant's threat to the community, if the court properly analyzes section 110-10(b) and the relevant conditions of release.

¶ 33                    III. CONCLUSION

¶ 34    For the reasons stated, we affirm in part and reverse in part the judgment of the circuit court of Kane County and remand this cause for further proceedings.

¶ 35    Affirmed in part and reversed in part. Cause remanded.

¶ 36    JUSTICE KENNEDY, dissenting:

¶ 37    While I agree that the State proved defendant committed a detainable offense, I do not believe that the trial court abused its discretion in finding that no condition or combination of conditions could mitigate the threat defendant poses to the community. The evidence put forth by the State included three additional trips to YMCA facilities, planning by looking up swimming schedules for boys, along with a long history of placing himself in the presence of young boys as their teacher, wrestling coach, and after school helper, all while admitting since 2018 to being "curious" and "aroused" by boys in puberty. On top of this, in 2018 defendant pled guilty to very similar behavior to the instant case, attempting to record a naked 13-year-old boy in the bathroom

adjacent to a park district pool, where he was employed to work near the basketball courts but instead chose to linger by the pool and inside an adjacent boys' bathroom for over 40 minutes. While we do not have a record of conditions imposed as part of his sentence in that case, such as whether he was required to undergo treatment, avoid certain locations, or avoid children, it is clear that defendant has a long history and pattern of predatory behavior towards young boys that was not stopped by the 2018 disposition. I believe the trial court was within its discretion when it determined that electronic home monitoring would not mitigate the risk defendant poses, particularly given the planning and repeated pattern involved in this offense.

¶ 38    I therefore respectfully dissent.