2024 IL App (2d) 240391-U
No. 2-24-0391
Order filed October 4, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 24-CF-834 |
| STEVEN GROSEY, | ) ) ) | Honorable Julia Yetter, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE McLAREN delivered the judgment of the court.
Justices Jorgensen and Kennedy concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court erred in finding that no condition or set of conditions could mitigate the real and present threat that defendant posed to the safety of the victims or others. The trial court is reversed, and the cause is remanded for further proceedings.

¶ 2    In this interlocutory appeal under Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024), defendant, Steven Grosey, timely appeals the order of the circuit court of Kane County granting the State's petition to detain him pursuant to Public Acts 101-652, § 10-255 (eff. Jan. 1, 2023),

commonly known as the Pretrial Fairness Act (Act).[1] See also Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date as September 18, 2023). For the following reasons, we affirm in part, reverse in part, and remand the case.

¶ 3                                    I. BACKGROUND

¶ 4     On April 23, 2024, the State charged defendant with two counts of predatory criminal sexual assault of a victim under 13 years old (720 ILCS 5/11-1.40(a)(1) (West 2022)) (Class X). The offenses were alleged to have been committed during one weekend in the summer of 2020.

¶ 5     A synopsis of facts related to the charges against defendant was prepared by the Kane County Sheriff's Department (Department) and provided as follows. In early April 2024, the Department filed a report of alleged sexual abuse of a child with the Kane County Child Advocacy Center (Center). In September 2022, the victim C.G. (born on February 22, 2009) was forensically interviewed by the Lakeville Police Department, near her home in Minnesota. C.G. reported that defendant sexually assaulted her while she was visiting her grandmother in 2020. Defendant was interviewed at the Center in October 2023 and denied C.G.'s accusations.

¶ 6     The report continued, stating that in December 2023, while investigating an unrelated case of alleged sexual abuse of a child, a juvenile cousin of C.G. disclosed that E.G. (born on August 11, 2011), C.G.'s younger sister, had also stated she had been sexually assaulted by defendant on the same evening in 2020. A Lakeview Police Department detective conducted a forensic

---

[1]The Act is also commonly known as the Safety, Accountability, Fairness and Equity-Today (SAFE-T) Act. Neither name is official, as neither appears in the Illinois Compiled Statutes or public acts.

interview of E.G. in January 2024, and her account closely matched that of her older sister. Defendant was arrested by warrant for two counts of predatory criminal sexual assault April 26, 2024. The State filed a petition to deny pretrial release the next day.

¶ 7    Defendant's public safety assessment report of April 27, 2024, indicated that he was 53 years old at the time of arrest. The pretrial officer rated defendant as 3 out of 6 for "New Violent Criminal Activity" and 2 out of 6 for "Failure to Appear." Relevant risk factors included the violent nature of the offense and defendant's prior incarceration for a misdemeanor conviction. The officer noted that if defendant were to be released, he should be subject to "Max Conditions," including intake appointment with court services, court reminders prior to hearings, and face-to-face contact as needed. The assessment specifically noted defendant's prior misdemeanor convictions from California in 1995 and 2003.

¶ 8    The hearing on the petition to deny pretrial release was held on April 28, 2024. The State argued defendant was a real and present threat to the victims and the community. The trial court noted that a delay in minors reporting sexual assault is not unusual. Relying upon the investigative report, the court found that "the proof is evident and the presumption's great that the Defendant committed the detainable offenses pursuant to Statute" and was a real and present threat to the "physical safety of the two alleged minor victims, and because this is a non-probationary forcible felony, to the community at large." The trial court, Judge Mark A. Pheanis presiding, concluded that it did not find "any condition or combination of conditions that would mitigate the threat."

¶ 9    In the written pretrial release/detention order, the trial court found defendant was charged with a detainable offense pursuant to section 110.6.1(a) of the Code (725 ILCS 5/110-6.1(a) (West 2022)), as amended by the Act. In support of its finding, the court referred to the police synopsis. The trial court found that defendant posed a real and present threat noting, defendant "is alleged

to have sexually abused two children in the course of apparent commission of crimes of opportunity as indicated on the record." In determining that less restrictive conditions would be insufficient, the court noted the "nature of the charges based on information available [the police synopsis] that defendant poses a danger to the victims and community that cannot be mitigated due to multiple acts of sexual abuse as indicated in the record."

¶ 10    The trial court, Judge Julia Yetter, presiding, held a review on the necessity of detention and denied defendant's requested release on May 29, 2024. During a subsequent hearing on June 6, 2024, the trial court heard additional facts and arguments relating to detention and again denied pretrial release. Defendant filed a timely motion for relief, and the trial court held a hearing on the motion on June 21, 2024. The trial court noted the violent nature of the crimes alleged, that the crimes allegedly occurred while other people were present elsewhere in the home, and that not even electronic home monitoring, "which would be arguably the most restrictive condition we have short of detention, sufficiently monitors who [defendant] is in contact with."

¶ 11    This timely appeal followed.

¶ 12                                      II. ANALYSIS

¶ 13    Pretrial release is governed by section 110 of the Code. 725 ILCS 5/110-1 *et seq.* (West 2022). To deny a defendant pretrial release, the trial court must find that the State proved the following by clear and convincing evidence: (1) the proof was evident or the presumption great that defendant committed a detainable offense *(id.* § 110-6.1(e)(1)); (2) defendant's pretrial release posed a real and present threat to the safety of any person or persons or the community *(id.* § 110-6.1(e)(2)); and (3) no condition or combination of conditions could mitigate the real and present threat to the safety of any person or the community or prevent the defendant's willful flight from prosecution *(id.* § 110-6.1(e)(3)).

¶ 14    For pretrial release, we review whether the trial court's factual findings were against the manifest weight of the evidence. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13; *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 10. A finding is against the manifest weight of the evidence when it is unreasonable. *People v. Deleon*, 227 Ill. 2d 322, 332 (2008); *People v. Sims*, 2022 IL App (2d) 200391, ¶ 72. Under a bifurcated standard, we review the trial court's ultimate decision regarding pretrial release for an abuse of discretion. *Trottier*, 2023 IL App (2d) 230317, ¶ 13; *People v. Miller*, 2024 IL App (1st) 240588, ¶ 27; *People v. Saucedo*, 2024 IL App (1st) 232020, ¶ 36. An abuse of discretion occurs when the court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court. *Trottier*, 2023 IL App (2d) 230317, ¶ 13; *People v. Williams*, 2022 IL App (2d) 200455, ¶ 52.

¶ 15                                        A. Detainable Offenses

¶ 16    Defendant first avers that the trial court erred in finding the proof evident or the presumption great that he committed a detainable offense. In support of this argument, defendant notes the allegation of sexual abuse only came out years after the incident and argues that the abuse could not have occurred because C.G. and E.G.'s aunt, Cheryl Ginley, claimed she had been up all night with the alleged victims. Defendant claims the statements of the alleged victims and their aunt, who is also defendant's girlfriend, cannot both be true and, thus, the State failed to establish the proof was evident or the presumption great that he committed the offenses.

¶ 17    The trial court reviewed multiple investigative reports that included interviews with the two alleged victims, their mother, and their aunt Cheryl. As the trier of fact, the trial court found that "the State did prove by clear and convincing evidence the proof evident and the presumption great that [defendant] did the detainable offense of predatory criminal sexual assault". "[W]e will not substitute our own judgment for the trier of fact on issues regarding the weight of the evidence

or the credibility of witnesses." *People v. Vega*, 2018 IL App (1st), ¶ 44.  Based upon our review of the record, the aforementioned court's findings were not contrary to the manifest weight of the evidence.

¶ 18                                     B. Danger to Any Person or the Community

¶ 19    Next, defendant argues that the State failed to meet its burden to establish that he poses a real and present threat to the safety of any person or the community.  The legislature set forth a number of factors the trial court can consider when making such a determination, including the nature of the offense, the history and characteristics of defendant, and "any other factors." 725 ILCS 5/110-6.1(g) (eff. Jan. 1, 2023).

¶ 20    Defendant notes the alleged victims live in another state and he has had no contact with either since 2020.  And while he does have a criminal history, defendant posits these are non-violent offenses from 20 and 30 years ago.  Defendant argues he had not been accused of any prior sexual assaults, and has a stable living situation and employment.

¶ 21    The State responds that the trial court repeatedly spoke to this issue.  During the June 6 hearing, the court agreed that defendant was unlikely to have access to C.G. and E.G. since they currently reside in Minnesota.  The court did not find defendant to be a threat to "those specific minors."  Since he was not acting in a caretaking capacity where he had regular access or control over the minor children, however, the trial court found the threat posed by defendant was not limited to just C.G and E.G.  "He is a threat in this Court's opinion to any minor that he has occasional access to and unfortunately that is any child of any friend, any family member, anyone who he has an opportunity to be around in a social setting in some way." During the June 21 hearing on defendant's Motion to Reconsider, the trial court elaborated further that such findings were based "not solely that these are violent allegations, but that these allegations allege that this

conduct occurred with other people around." See *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 18 (noting that detention decisions must be "individualized" and based both on "the specific facts of the case and the defendant's individual background and characteristics"). Upon our review of the record, the trial court's finding that defendant is threat to the community is not against the manifest weight of the evidence.

¶ 22                                 C. Conditions of Release

¶ 23    Finally, defendant asserts that the trial court erred in finding that no less restrictive conditions could mitigate the threat he poses to the community. Defendant is correct that the inherent danger presented by the charges themselves is insufficient to rebut the presumption of pretrial release. Indeed, in enacting the Act, "[o]ur legislature has mandated that *all criminal defendants* are eligible for pretrial release." (Emphasis added.) *People v. Stock*, 2023 IL App (1st) 231753, ¶ 18 (citing 725 ILCS 5/110-6.1(e) (West 2022)). Even those charged with violent offenses are presumed eligible for release and, if "the base allegations that make up the *sine qua non* of a violent offense were sufficient on their own to establish this element, then the legislature would have simply deemed those accused of violent offenses ineligible for release." *Id.* ¶ 18.

¶ 24    The State counters that the trial court held it had "a limited ability to monitor" defendant. The court held that while electronic home monitoring would allow the court to monitor defendant's geographic location, it would not "sufficiently" monitor to whom defendant was in contact. While the State provided a summary of the trial court's reasoning, it failed to point to any clear and convincing evidence in the record that no condition or combinations could mitigate the real and present threat.

¶ 25    If the trial court denies pretrial release to a defendant, "the court must make written findings summarizing the reasons for denying pretrial release, including why less restrictive conditions would not avoid a real and present threat to the safety of any person or the community, based on the specific articulable facts of the case." *People v. Horne*, 2023 IL App (2d) 230382, ¶ 18.  The State must then also provide *evidence* to meet its burden to show that there is no condition or combination of conditions to mitigate that perceived danger.

¶ 26    Here, the State did not provide *any* such evidence.  The State only argued that the court should consider the potential risk for psychological harm to C.G. and E.G. if they learn that defendant has been released, even with electronic home monitoring.  Citing only to Justice Birkett's dissent in *People v. Martinez-Ortiz*, 2024 IL App (2d) 240102-U (Birkett, J., dissenting), the State acknowledged it lacked authority for this position.  While it is likely true that the release of defendant could have some potential psychological impact on the C.G. and E.G., this same argument could be made against the release of every criminal defendant.  Similarly, the trial court's concern about the limitations of electronic home monitoring could logically be extended to deny the release of any person accused of this crime, regardless of the circumstances.  Again, it is insufficient to merely argue that there is no way to mitigate the risk because of the nature of the charges alone.  *Stock*, 2023 IL App (1st) 231753, ¶ 18; *People v. McGee*, 2024 IL App (2d) 240057-U, ¶ 19 (remanded when "the court did not find, nor does the record presently reflect, that there is evidence that defendant would not likely comply with less-restrictive conditions"); *People v. Martinez-Ortiz*, 2024 IL App (2d) 240102-U, ¶ 32 (remanded when the State "failed to proffer more than conjecture that defendant could reoffend in some manner").

¶ 27    In contrast, defense counsel suggested specific conditions to mitigate risk, including a bar from unsupervised interactions with minors, no-contact orders, electronic home monitoring, and

requirements that defendant maintain contact with pretrial services to ensure he follows the court's orders. The State did not offer any evidence to demonstrate these proffered conditions would be insufficient. And the court did not make any findings to overcome the presumption that defendants are eligible for release with conditions, except to note concerns about electronic home monitoring in general. See *People v. Castillo*, 2024 IL App (1st) 232315, ¶ 25 (circuit court's finding was against the manifest weight of the evidence when the State failed to produce evidence less-restrictive measures could mitigate the safety threat to the victims or willful flight). For example, the court did not find, nor does the record presently reflect, that there is evidence that defendant would not likely comply with less-restrictive conditions. See *People v. Jones*, 2024 IL App (2d) 230535-U, ¶ 15 ("These findings were individualized and based upon the specific articulable facts of the case"). The court's finding that the State met its burden to establish that no condition or combination of conditions could mitigate the possible threat was not supported by the evidence. The court's finding was therefore against the manifest weight of the evidence. See *People v. Finch*, 2023 IL App (2d) 230381-U, ¶ 19; *People v. Lee*, 2024 IL App (2d) 240208-U, ¶ 32. In the absence of clear and convincing evidence of this element, the trial court erred in determining that no condition or combination of conditions could mitigate the threat posed by defendant. *Stock*, 2023 IL App (1st), ¶ 21.

¶ 28                                  III. CONCLUSION

¶ 29    The trial court erred in denying defendant's pretrial release. We reverse the order of the Lake County circuit court and remand to set conditions of defendant's release.

¶ 30    Reversed and remanded.