**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 240160-U

Order filed June 10, 2024

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-24-0160 Circuit No. 23-CF-888 |
| RICK'L THOMPSON, | ) ) ) | Honorable Sarah-Marie Jones, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE DAVENPORT delivered the judgment of the court.
Justice Brennan concurred in the judgment.
Presiding Justice McDade dissented.

**ORDER**

¶ 1      *Held*: The circuit court did not abuse its discretion in granting the State's petition to deny pretrial release

¶ 2      Defendant, Rick'l Thompson, appeals the circuit court's grant of the State's petition to deny him pretrial release. He claims the State failed to prove by clear and convincing evidence that (1) the proof is evident or the presumption great that he committed the offenses charged, (2) he poses a real and present threat to the safety of any person or the community, and (3) no conditions

can mitigate the real and present threat to the safety of any person or the community, or defendant's willful flight. He also claims the court erred in its determination that no conditions would reasonably ensure defendant's appearance for later hearings or prevent defendant from being charged with a subsequent felony or Class A misdemeanor. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        On June 1, 2023, Defendant was indicted on three counts of first degree murder (720 ILCS 5/9-1(a)(1), (2) (West 2022)), one count of violating the armed habitual criminal statute (Class X) (*id.* § 24-1.7(a), (b)), and one count of unlawful possession of a weapon by a felon (Class 3) (*id.* § 24-1.1(a), (e)). Defendant's bail was set at $2,500,000, and he remained in custody. On February 14, 2024, defendant filed a motion for pretrial release. In response, the State filed a verified petition to detain, alleging defendant was charged with a forcible felony, and his release posed a real and present threat to the safety of any person, persons, or the community under section 110-6.1(a)(1.5) of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-6.1(a)(1.5) (West 2022)).

¶ 5        The factual basis provided the following. On November 6, 2022, Do.T. was hosting a birthday party at her townhouse residence in Park Forest. At around 11 p.m., officers were dispatched to her residence, where they found a man unresponsive on the kitchen floor. The victim, identified as Marvin Johnson, was later pronounced dead at the hospital.

¶ 6        His autopsy confirmed he had died of multiple gunshot wounds. The police recovered five fired .32 caliber cartridge casings from the scene. On April 14, 2023, an Illinois State Police lab report indicated DNA recovered from the fired cartridges matched defendant's DNA.

¶ 7        The responding officers interviewed all those present at the party. The interviewees were cooperative, with the exception of T.B., who police later learned was defendant's brother.

¶ 8    Do.T. told police she was standing outside the residence when a man she did not know approached her. He said he was there to help Kaliyah, one of the party guests. Knowing Kaliyah was in fact sick upstairs, Do.T. believed him and allowed him entry into the residence. As she walked up the stairs to Kaliyah, she heard gunshots and realized the man was no longer behind her.

¶ 9    Di.T was the only other person at the party to come in close contact with the shooter that night. She told police she was in the kitchen with the victim when an unfamiliar man walked in. She asked the man how he was doing, and he simply said "what's up" in a low voice. He then shot the victim multiple times and walked out.

¶ 10    Both Do.T. and Di.T. were shown a photo lineup that included defendant but neither made a positive identification.

¶ 11    The victim's grandmother later contacted police, expressing her surprise that he attended a party in Park Forest. According to her, the victim had been afraid to go to Park Forest because "years ago he got into trouble" with an individual there and had even reached out to the police with information about that individual. The Park Forest police were familiar with the victim's report; he had provided information about defendant. Around this time, the police also learned that the uncooperative partygoer, T.B., was defendant's brother.

¶ 12    On January 23, 2023, a traffic stop was effectuated on T.B, who thereafter went to the police department and made a statement. T.B. admitted he contacted defendant to tell him the victim was at the party. T.B. shared the party's location with defendant, and defendant stated he was coming. T.B. believed defendant would either not show up or would just "beat up" the victim.

¶ 13    On May 12, 2023, a search warrant was executed at a residence where defendant stayed with his girlfriend. Next to his identification was a .32 caliber unspent cartridge that was the same

brand used in the shooting. There was also a box containing the same caliber and brand of ammunition. The car belonging to defendant's girlfriend looked similar to a car that appeared on surveillance video arriving on the scene near the time of the shooting. Finally, defendant's phone pinged a cell phone tower near the crime scene nine times around the time of the shooting.

¶ 14     Defendant gave a brief statement and admitted to knowing the victim. Officers told him the victim had been shot, and defendant acted like he did not know. He later stated that "he did not kill him over something that happened ten years ago." When he made that statement, no one had mentioned the victim was dead. He also said he was not on camera doing anything and there were no witnesses.

¶ 15     After seeing a press release on defendant's arrest, Do.T. and Di.T. came forward and identified defendant as the shooter.

¶ 16     Defendant's criminal history included a probation violation and four felony convictions: two burglaries, one robbery, and one electronic monitoring violation.

¶ 17     The court held a detention hearing on February 16, 2024. The State provided the factual basis and defendant's criminal history, arguing he was a danger to the community and to the individuals who provided information implicating him. Defense counsel argued defendant was not a threat and could live with his girlfriend in Orland Park. Counsel asked for electronic monitoring. The court took the matter under advisement.

¶ 18     On February 23, 2024, the court granted the State's petition, finding the State had met its burden by clear and convincing evidence. In doing so, the court found defendant was a threat to the community and stated,

> "Additionally, he has a previous charge of escape and a charge of robbery. The robbery I know for sure is considered to be a crime of violence. But he was on the

4

electronic monitor when he was charged with escape. So that, again, factors in my decision that there is no least less [*sic*] restrictive means to ensure his appearance in court."

¶ 19                                                            II. ANALYSIS

¶ 20         On appeal, defendant argues the court erred in granting the State's petition to detain. His claim of error consists only of checked boxes on his notice of appeal, through which he challenges all three findings required to deny a defendant pretrial release. 725 ILCS 5/110-6.1(e)(1-3) (West 2022). We review the court's factual findings under a manifest weight standard and its ultimate decision to deny pretrial release for an abuse of discretion. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. Under either standard, we consider whether the court's determination is arbitrary or unreasonable. *Id.*; see also *People v. Horne*, 2023 IL App (2d) 230382, ¶ 19.

¶ 21         Everyone charged with an offense is eligible for pretrial release, which may only be denied in certain situations. 725 ILCS 5/110-2(a), 110-6.1 (West 2022). The State must file a verified petition requesting the denial of pretrial release. *Id.* § 110-6.1. The State then has the burden of proving by clear and convincing evidence (1) the proof is evident or presumption great that defendant committed a detainable offense, (2) defendant poses a real and present threat to any person, persons, or the community or is a flight risk, and (3) no conditions could mitigate this threat or risk of flight. *Id.* § 110-6.1(a), (e). Sections 110-5(a) and 110-6.1(g) set forth factors for the court to consider when determining dangerousness and any mitigating conditions. *Id.* §§ 110-5(a), 110-6.1(g).

¶ 22         Here, the record supports all three requisite findings under section 110-6.1(e). First, the proof was evident that defendant committed a detainable offense. Witnesses reported defendant had committed the shooting, the police found defendant's DNA on the fired cartridges, defendant's

brother admitted defendant came to the party when he learned the victim was there, and cell tower evidence placed defendant in the vicinity of the party around the time of the shooting.

¶ 23 Second, it was not against the manifest weight of the evidence for the court to find defendant posed a real and present threat. The State presented evidence that defendant was a felon with a significant criminal history. Even without this history, the alleged facts in this case are egregious. The State's proffer indicates defendant brazenly entered a birthday party and shot a person multiple times over an old grievance. Moreover, the court can reasonably infer Do.T. and Di.T. were initially afraid to identify defendant as the culprit, as they only identified him *after* learning of his arrest.

¶ 24 Third, the record shows the State presented information on the factors used to determine mitigating conditions, including the nature and circumstances of the offenses and the history and characteristics of defendant. See *id.* § 110-5(a). The court noted defendant had previously committed robbery, a violent offense, as well as the crime of escape for violating an electronic monitoring condition. Additionally, the record indicates that defendant, a convicted felon, disregarded an edict not to possess a firearm. Under such circumstances, a court may reasonably find a defendant prepared to defy restrictions in the future. It was not against the manifest weight of the evidence for the court to find no conditions could mitigate the threat defendant posed. The court did not abuse its discretion in granting the State's petition.

¶ 25 III. CONCLUSION

¶ 26 The judgment of the circuit court of Will County is affirmed.

¶ 27 Affirmed.

¶ 28 PRESIDING JUSTICE McDADE, dissenting:

6

¶ 29    I dissent from the majority's decision to affirm the circuit court's denial of pretrial release for this defendant.

¶ 30    As the majority recites, section 110-6.1(e) of the Code of Criminal Procedure of 1963 states that "[a]ll defendants shall be presumed eligible for pretrial release. . . ." 725 ILCS 5/110-6.1(e) (West 2022). To rebut this presumption, the State must prove the following three elements, by clear and convincing evidence: (1) that the proof is evident or the presumption great that the defendant has committed a detainable offense; (2) that the defendant poses a real and present threat to the safety of any person, persons, or the community; and (3) that no conditions can mitigate this threat. *Id.*

¶ 31    I agree with the majority's finding that the State satisfied the first of the above elements. I do not believe the State has made an adequate showing in regard to the second element, standing alone, that defendant poses a real and present danger to anyone. This deficiency is exacerbated by the State's failure to even address its burden on the third element. As to that element, the majority finds that the circuit court's determination on the issue of conditions was supported by the manifest weight of the evidence because the State presented information regarding the circumstances of the charged offenses and defendant's criminal history, which included a conviction for escape while he was on electronic monitoring. Although the State indeed presented this information, its verified petition to deny pretrial release is devoid of the argument that no mitigating conditions exist, and does not even acknowledge that conditions form an element when setting out its burden of proof. Nor did the State mention or argue that no mitigating conditions exist during the detention hearing. Under these circumstances, it cannot be said that the State met its burden of proof as to this third element. See Black's Law Dictionary 190 (7th ed. 1999) (explaining that a party's burden of proof includes the burden of persuasion, which is the duty to convince the fact-finder to view the facts

7

in a way favorable to that party). Consequently, I would reverse the circuit court's judgment as an abuse of discretion.