2024 IL App (3d) 240180

Opinion filed July 2, 2024

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-24-0180 Circuit No. 23-CF-470 |
| JAMIYAH L. JOHNSON, | ) ) ) | Honorable Amy Bertani-Tomczak, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BRENNAN delivered the judgment of the court, with opinion.
Justice Davenport concurred in the judgment and opinion.
Presiding Justice McDade dissented, with opinion.

**OPINION**

¶ 1     Defendant, Jamiyah L. Johnson, appeals from the circuit court's granting of the State's verified petition to deny pretrial release. For the reasons set forth below, we affirm.

¶ 2                         I. BACKGROUND

¶ 3     Defendant, Jamiyah L. Johnson, was indicted on March 30, 2023, with aggravated vehicular hijacking (Class X) (720 ILCS 5/18-4(a)(4), (b) (West 2022)), being an armed habitual criminal (Class X) (*id.* § 24-1.7(a), (b)), aggravated unlawful possession of a stolen motor vehicle (Class 1) (625 ILCS 5/4-103.2(a)(3), (c) (West 2022)), vehicular hijacking (Class 1) (720 ILCS

5/18-3(a), (b) (West 2022)), unlawful possession of a weapon by a felon (Class 2) (*id.* § 24-1.1(a), (e)), and aggravated unlawful restraint (Class 3) (*id.* § 10-3.1(a), (b)). Defendant's bail was set at $2.5 million, but he remained in custody. On March 1, 2024, defendant filed a motion seeking pretrial release. In response, the State filed a verified petition to deny pretrial release, alleging defendant was charged with a nonprobationable felony and his release posed a real and present threat to the safety of any person, persons, or the community under section 110-6.1(a)(1) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1(a)(1) (West 2022)). The petition also alleged that defendant had a high likelihood of willful flight to avoid prosecution.

¶ 4        The factual basis provided that on March 10, 2023, at 7:26 a.m. officers were dispatched for the report of a man attempting to stop cars on the roadway. The subject had approached Brian Lewis and John Reynolds in their vehicles. When the officers arrived, Kaylee Thompson told them that she stopped at a stop sign in her Dodge Charger when a man entered the passenger side of her car, held a handgun to her head, and told Thompson to drive. Thompson drove across the road and the man told her to "get the f*** out" of the vehicle. Thompson exited the vehicle, and the man entered the driver's side and fled in the Charger. Three witnesses also gave statements. The car was equipped with a LoJack global positioning system (GPS), and officers were able to locate the vehicle in Chicago about 35 yards from the residence of defendant's girlfriend. The vehicle was swabbed and tested for deoxyribonucleic acid (DNA). DNA located on the steering wheel and the gear shift matched defendant.

¶ 5        Later that day officers recovered an abandoned vehicle approximately 350 yards from where the hijacking had occurred. The vehicle belonged to Takyra Henderson. An officer conducted a license plate reader canvass of the vehicle over the previous 48 hours and determined the vehicle was in Bloomington the day before. Henderson and defendant had been arrested in

2

Bloomington at 1 a.m. on March 10. Defendant was released at approximately 3:36 a.m. The booking photograph and body camera footage of defendant's arrest in Bloomington matched the description of the perpetrator. Thompson was unable to identify defendant in a photo lineup, but Reynolds and Lewis immediately picked defendant out as the person who had approached them. Henderson called the Braidwood police and indicated that she believed defendant stole her vehicle.

¶ 6    Defendant was arrested and interviewed. When asked how he got to Chicago from Bloomington, defendant said his uncle picked him up, and they went to Danville. Defendant was in possession of a cell phone and gave officers permission to search it. The cell phone had shared its location in a text message on March 10 at 5:35 a.m., and the location showed the place where Henderson's car was subsequently found. Officers interviewed defendant's girlfriend who stated that Henderson was her cousin, and defendant drove from Bloomington in the car. She stated that the car broke down on the side of the road and that she got mad at defendant and walked away.

¶ 7    The petition indicated that defendant was on parole for possession of a stolen motor vehicle and aggravated unlawful use of a weapon. He had two other felony convictions for aggravated unlawful use of a weapon.

¶ 8    A detention hearing was held on March 7, 2024. Defense counsel stated that defendant could reside with his girlfriend in Lisle if released. Defendant had children, one of which had been in an accident. Counsel asked that defendant be placed on electronic monitoring. The State indicated that defendant was on parole at the time of the offense and had multiple felony convictions. The State said when defendant's DNA was run, it matched another vehicular hijacking in 2018. The State further presented the factual basis and indicated that defendant was a flight risk and a danger to the community.

3

¶ 9 The court granted the petition, finding the State met its burden by clear and convincing evidence. In doing so the court stated, *inter alia*, that defendant was a flight risk and a danger to the community and no other measures could be taken to assure the safety of the community or the fact that he may flee. The court's written order indicated that its decision was based on the nature and circumstances of the offenses, defendant's prior violent criminal history, his access to weapons, the fact that he was on parole, and that defendant's DNA was recovered from the car.

¶ 10                                    II. ANALYSIS

¶ 11 On appeal, defendant argues that the court erred in granting the State's petition to detain. He solely argues that he could be placed on electronic monitoring. We consider whether factual findings are against the manifest weight of the evidence, but the ultimate decision to grant or deny the State's petition to detain is reviewed for an abuse of discretion. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. Under either standard, we consider whether the court's determination is arbitrary or unreasonable. *Id.*; see *People v. Horne*, 2023 IL App (2d) 230382, ¶ 19.

¶ 12 Everyone charged with an offense is eligible for pretrial release, which may only be denied in certain situations. 725 ILCS 5/110-2(a), 110-6.1 (West 2022). The State must file a verified petition requesting the denial of pretrial release. *Id.* § 110-6.1. Section 110-6.1(d)(1) prescribes the contents of the State's petition, requiring that

> "The petition shall be verified by the State and shall state the grounds upon which it contends the defendant should be denied pretrial release, including the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts or flight risk, as appropriate." *Id.* § 110-6.1(d)(1).

Conspicuously absent from the required content of the petition is any requirement that the State specifically address a nonexhaustive list of conditions that might arguably be imposed to mitigate a defendant's real and present threat.

¶ 13 The State then has the burden of proving by clear and convincing evidence (1) the proof is evident or presumption great that defendant committed a detainable offense, (2) defendant poses a real and present threat to any person, persons, or the community or is a flight risk, and (3) no conditions could mitigate this threat or risk of flight. *Id.* § 110-6.1(a), (e)(1)-(3). Sections 110-5(a) and 110-6.1(g) set forth factors for the court to consider when determining dangerousness and any conditions. *Id.* §§ 110-5(a), 110-6.1(g). Defendant does not challenge that the State satisfied its burden as to the commission of a detainable offense or dangerousness. Rather, he argues that it did not prove by clear and convincing evidence that no conditions could mitigate his threat to the community.

¶ 14 Where a defendant's danger is proven by clear and convincing evidence, the Code does, of course, likewise require the State to prove by clear and convincing evidence that no condition or combination of conditions can mitigate the threat. *Id.* § 110-6.1(e)(3). This burden, however, can be satisfied in a variety of ways: from the presentation of evidence to be sure, but also by common sense consideration of the factors listed in section 110-5(a)(1)-(7), including the nature of the offense, the strength of the case, the defendant's mental condition, the defendant's criminal history, the defendant's compliance with mandatory supervised release (MSR) or probation, etc. *Id.* § 110-5(a)(1)-(7). The State's burden does not obligate it to specifically address the efficacy of every conceivable condition or combination of conditions. Rather, it is the trial court that must ultimately consider all it has heard and, if ordering detention, make written findings explaining "why less

restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community." *Id.* § 110-6.1(h)(1).

¶ 15    The record shows that the State presented information regarding the nature and circumstances of the offenses, the history and characteristics of defendant, the violent offenses that he had been convicted of, and the fact that he was on parole at the time of the offense. See *id.* § 110-5(a). As was observed in *People v. Bueno*, 2024 IL App (2d) 240053, ¶ 13 (quoting 725 ILCS 5/110-2(a) (West 2022)),

> "Section 110-5(a) refers to a defendant's history and whether he or she was on parole, probation, or other release at the time of the current offense, and section 110-2(a) notes that pretrial release is generally presumed, but only on certain conditions, including that 'the defendant *** *complies* with all terms of pretrial release.' " (Emphasis in original.)

Thus, the trial court is tasked with considering not just whether conditions short of detention exist, but also whether a defendant is likely to *comply* with them.

¶ 16    Here, the proffered evidence that defendant failed to comply with conditions imposed while on MSR by committing the exact same dangerous offenses satisfied the State's burden of establishing that no conditions less than detention could mitigate the risk to the community. Defendant, on MSR for aggravated unlawful use of weapon and possession of a stolen vehicle, forced himself into the victim's car, held a gun to her head, forced her to drive a short distance, and then ordered her out of the car which he then stole. Clearly, it was of no consequence to defendant that he was on MSR at the time of the instant offenses, and it would be entirely unreasonable to conclude he would comply with electronic home monitoring on pretrial release. Simply put, the evidence supporting the State's petition satisfied its burden. See *People v. Lee*, 2024 IL App (1st) 232137, ¶ 33 (where the defendant was on parole from a gun case and failed to

comply with the conditions placed upon him, this "demonstrated history of refusing to abide by conditions of release" satisfied the State's burden of showing no less restrictive conditions were appropriate, and the trial court did not err in so finding); *People v. Davis*, 2023 IL App (1st) 231856, ¶¶ 31-32 (State satisfied burden of showing that no less restrictive conditions were appropriate where the defendant's history, including a prior conviction of escape from law enforcement, demonstrated an unwillingness to follow rules and the unlikelihood that he would follow the court's order, rendering futile a release with conditions).

¶ 17 We conclude it was not against the manifest weight of the evidence for the court to find that there were no conditions to mitigate the threat defendant posed. Therefore, the court did not abuse its discretion in granting the State's petition.

¶ 18                                III. CONCLUSION

¶ 19 The judgment of the circuit court of Will County is affirmed.

¶ 20 Affirmed.

¶ 21 PRESIDING JUSTICE McDADE, dissenting:

¶ 22 The majority has affirmed the circuit court's decision to grant the State's petition to deny Johnson pretrial release. I would hold that the State failed to meet its burden of proof under section 110-6.1(e)(3) of the Code and that Johnson would necessarily have to be admitted to pretrial release despite the nature of his alleged crimes. Thus, I dissent.

¶ 23 When reviewing a circuit court's decision on pretrial release, we apply manifest-weight-of-the-evidence review to the court's factual findings and abuse-of-discretion review to the court's ultimate decision to grant or deny pretrial release. *Trottier*, 2023 IL App (2d) 230317, ¶ 13.

¶ 24 "All persons charged with an offense shall be eligible for pretrial release before conviction." 725 ILCS 5/110-2(a) (West 2022). The statutory scheme applicable to pretrial release

7

creates a presumption that a defendant is entitled to release. *Id.* That presumption can *only* be rebutted, and pretrial release denied, if the State files a verified petition opposing release and satisfies a three-part burden of proof at a hearing in the circuit court on the matter. *Id.* § 110-6.1(a). That burden of proof is set forth in section 110-6.1(e) as follows:

"(e) Eligibility: All defendants shall be presumed eligible for pretrial release, and the State shall bear the burden of proving by clear and convincing evidence that:

(1) the proof is evident or the presumption great that the defendant has committed an offense listed in subsection (a), and

(2) for offenses listed in paragraphs (1) through (7) of subsection (a), the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, by conduct which may include, but is not limited to, a forcible felony, the obstruction of justice, intimidation, injury, or abuse as defined by paragraph (1) of Section 103 of the Illinois Domestic Violence Act of 1986, and

(3) no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate (i) the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, for offenses listed in paragraphs (1) through (7) of subsection (a), or (ii) the defendant's willful flight for offenses listed in paragraph (8) of subsection (a), and

(4) for offenses under subsection (b) of Section 407 of the Illinois Controlled Substances Act that are subject to paragraph (1) of subsection (a), no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, and the defendant poses a serious risk to not appear in court as required." *Id.* § 110-6.1(e).

Not every subsection of section 110-6.1(e) may be applicable in any given case. For example, depending on the offense(s) charged, either subsection (e)(3) or (e)(4) may apply; in both cases, however, the State is still required to prove the "conditions" element that appears in both subsections.

¶ 25    Despite the varying applicability of section 110-6.1(e)'s subsections, the statute is abundantly clear that the burden of proving that a defendant should be detained, rather than released, lies with the State. "Burden of proof" contains two concepts: first, a burden of "going forward with the evidence," *i.e.*, a burden of production, and second, a burden of persuasion. Black's Law Dictionary 196 (6th ed. 1990). The burden of production is "[t]he obligation of a party to introduce evidence sufficient to avoid a ruling against him on the issue." *Id.* The burden of persuasion is "[t]he onus on the party with the burden of proof to convince the trier of fact of all elements of his case." *Id.* In pretrial release cases, then, when the State opposes release and seeks detention, it would seem elementary that for the State to meet its legislatively mandated burden under section 110-6.1(e)(3) or (4), it would address at a very minimum the conditions explicitly listed in section 110-10(b) because that section is explicitly referenced by section 110-6.1(e)(3) and (4). 725 ILCS 5/110-6.1(e)(3), (4), 110-10(b) (West 2022); see *People v. Stock*, 2023

9

IL App (1st) 231753, ¶¶ 15-19. Of course, not every conceivable condition of pretrial release needs to be addressed by the State to meet its burden under section 110-6.1(e)(3). But the language of that section shows that the legislature contemplated what conditions would be applicable and mandated that the State produce evidence and present argument on them.

¶ 26    If the State fails to meet its burden of proof—namely, its burdens of production and persuasion—under section 110-6.1(e), the presumption that the defendant is eligible for release stands unrebutted, and the defendant cannot be detained. See 725 ILCS 5/110-6.1(e) (West 2022). If, on the other hand, the State satisfies its burden, the presumption vanishes. However, detention in that situation is not automatic, as the ultimate decision of whether a defendant will be released or detained has now passed squarely into the discretionary power of the circuit court. See, *e.g.*, *Trottier*, 2023 IL App (2d) 230317, ¶ 13 (holding that "[w]e review for an abuse of discretion the trial court's ultimate determination regarding pretrial release").

¶ 27    I disagree with the majority's conclusion in this case that the State satisfied its burden of proof on the "conditions" element from section 110-6.1(e)(3). I note initially that the State never acknowledged the existence of the "conditions" element in its verified petition.[1] Then, at the

---

[1]I do not mention the State's omission of the "conditions" element from the petition except as confirmation that the State has presented neither oral nor written evidence on this element of its burden of proof. In addition, it shows a pattern of the State ignoring that element altogether. However, I am compelled to address the majority's comment on what the statute requires the State to include in its verified petition. The majority notes, "[c]onspicuously absent from the required content of the petition is any requirement that the State specifically address a nonexhaustive list of conditions that might arguably be imposed to mitigate a defendant's real and present threat." *Supra* ¶ 12. It is true that the language of section 110-6.1(d)(1) does not explicitly require any such list. 725 ILCS 5/110-6.1(d)(1) (West 2022). To the extent the majority might be suggesting that section 110-6.1(d)(1) forecloses inclusion of the "conditions" element in the verified petition, such is clearly not the case. The statute provides that the State "shall state the grounds upon which it contends the defendant should be denied pretrial release, *including* the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts or flight risk, as appropriate." (Emphasis added.) *Id.* The material following "including" is obviously a noninclusive list. Additionally, because the State's burden of proof includes proving the "conditions" element from section 110-6.1(e)(3) (*id.* § 110-6.1(e)(3)), it is entirely reasonable to assume that the State's petition would contain *something* about the "conditions" element, as that

hearing, the only comment the State made that could reasonably be construed as relating to the "conditions" element was as follows:

¶ 28    "Before I even go into the facts of this case, I would like to go into additional grounds why the defendant should be detained, which is that he is currently on parole through the Illinois Department of Corrections for possession of a stolen motor vehicle out of Cook County and aggravated unlawful use of a weapon in Cook County."

¶ 29    Rather than subjecting the State's single sentence to meaningful scrutiny, the majority engages in speculation. First, the majority speculates that Johnson committed the "exact same dangerous offenses" for which he was on parole. *Supra* ¶ 16. However, the State did not present certified copies of Johnson's convictions into evidence at the hearing or discuss what conditions were applicable to his MSR. Further, the State did not discuss the circumstances of Johnson's convictions. In that regard, I note that the Illinois Department of Corrections' website states that Johnson's convictions were for "AID/ABET/POSS/SELL STOLEN VEH" and "AGG UNLWFL USE WEAPON/VEH/2ND." The circumstances of those crimes and Johnson's role in them is indiscernible from the Illinois Department of Corrections' website and from the single-sentence statement the State made at Johnson's pretrial detention hearing. That information could have been relevant to whether any conditions could apply to Johnson's pretrial release that would mitigate any risk he posed. There was no evidence presented in this case for the majority to properly conclude that Johnson engaged in the "exact same dangerous offenses." *Supra* ¶ 16.

¶ 30    Second, the majority speculates that "it would be entirely unreasonable to conclude he would comply with electronic home monitoring on pretrial release." *Supra* ¶ 16. There was no

_____

element contains part of "the grounds upon which [the State] contends the defendant should be denied pretrial release" (*id.* § 110-6.1(d)(1)).

11

evidence that Johnson was on electronic home monitoring at the time he allegedly committed the current offenses. Requiring a commonsense level of evidence—which, at a very minimum, the statutory scheme contemplates—is not unreasonable. In fact, requiring that type of evidence before arriving at a conclusion like the majority's is necessitated by the standard of clear and convincing evidence.

¶ 31      In sum, while it did address Johnson's criminal history and the facts that led to the charges in this case, the State never actually addressed whether any condition or combination of conditions could mitigate the safety or willful-flight risks allegedly posed by Johnson. Because the State failed to meet its burden under section 110-6.1(e)(3), the statutory presumption in favor of pretrial release was not rebutted and therefore must prevail.

¶ 32      I write further to note that numerous pretrial release cases issued by this court claim the State can meet its burden of proof under section 110-6.1(e) merely by producing evidence related to the factors the circuit court is statutorily mandated to consider under section 110-5 when considering what conditions should attach to a defendant's pretrial release. See, *e.g.*, *People v. Mikolaitis*, 2024 IL App (3d) 230791, ¶¶ 9-11, *appeal allowed*, No. 130693 (Ill. June 12, 2024); *People v. Salazar*, 2024 IL App (3d) 240066-U, ¶¶ 14-15, 17; *People v. Grant*, 2024 IL App (3d) 230623-U, ¶¶ 7-8. The primary problem with these cases is that they have resulted in this court approving the fundamentally flawed approach the State has taken in pretrial-release proceedings.

¶ 33      Generally, as it did in this case, the State uses a preprinted form to file its verified petition to deny pretrial release. The form lists the crimes from section 110-6.1(a), which are the crimes for which pretrial release can be denied, and contains either boxes or lines that the State checks when applicable. The checked boxes and lines clearly correspond to the first element contained in section 110-6.1(e)(1). 725 ILCS 5/110-6.1(e)(1) (West 2022). Next, the form also contains space

12

for the factual basis for the petition, which goes to the second element contained in section 110-6.1(e)(2). *Id.* § 110-6.1(e)(2). However, and again as is the situation in this case, the form generally does not address the third element contained in section 110-6.1(e)(3) or (4). See *supra* ¶ 27 n.1.

¶ 34   Next, at the hearing on the petition, the State tends to do little more than recite the factual basis for the petition. Sometimes, the State addresses matters such as the defendant's criminal history or other matters it believes are relevant. However, there is rarely, if ever, an attempt by the State to present specific evidence or argument on whether any condition or conditions exist that could mitigate the safety or willful-flight risks a defendant allegedly poses. Certainly, there was not in this case. This is despite the explicit burden the legislature has placed on the State in section 110-6.1(e)(3) and (4) to prove the "conditions" element by clear and convincing evidence. 725 ILCS 5/110-6.1(e)(3), (4) (West 2022).

¶ 35   I reiterate that section 110-6.1(e)(3) and (4) explicitly refers to the partial list of conditions that appears in section 110-10(b). *Id.* The legislature has therefore specifically included a roadmap for the State, yet the State generally does not make any attempt at satisfying its burden on the "conditions" element. When the State does actually mention this element during pretrial release hearings, it generally just makes a conclusory statement that no condition or combination of conditions could mitigate the safety and/or willful-flight risks a defendant allegedly poses, or it responds only to a specific suggestion made by the defendant's counsel. Most times, the circuit court simply enters a general finding agreeing with the State. Then, on appeal, this court tends to affirm that finding without subjecting it to meaningful scrutiny.

¶ 36   I simply cannot agree with decisions excusing the State's obligation by claiming that it can sufficiently meet its burden under section 110-6.1(e)(3) or (4) by presenting evidence potentially relevant to the factors the circuit court is required to consider when imposing conditions on pretrial

13

release under section 110-5. Section 110-5 is not referenced in section 110-6.1(e)(3) or (4); section 110-10(b) is. *Id.* The conditions included in section 110-5 are addressed to the circuit court's discretion—a factor which does not come into play until the State has successfully met its burden and rebutted the presumption of eligibility for release. There is no reason to give the State a free pass on its burden on the "conditions" element, especially because the statutory scheme explicitly presumes that defendants are eligible for pretrial release.

¶ 37　　　　In this case, the majority presents an overly generalized summary of what section 110-6.1(e) requires and then immediately recasts the statute by referring to section 110-5 (*supra* ¶ 13), as if it were self-evident that section 110-5 relates to the State's burden under section 110-6.1(e). Then, when it analyzes whether the circuit court erred in granting the State's petition to detain, the majority explicitly uses section 110-5 as support for its decision. *Supra* ¶ 15. I do not believe the majority's use of section 110-5 in this manner is compliant with a statute we are duty-bound to apply. What we ought to be doing is addressing the fact that the State has been ignoring the "conditions" element generally—and section 110-10(b) specifically—and analyzing what impact that disregard has for the defendants that come before us.

¶ 38　　　　For the foregoing reasons, I dissent.

*People v. Johnson*, 2024 IL App (3d) 240180

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 23-CF-470; the Hon. Amy Bertani-Tomczak, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Carolyn R. Klarquist, and Samuel B. Steinberg, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Patrick Delfino and David J. Robinson, of State's Attorneys Appellate Prosecutor's Office, of Springfield, for the People. |