**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 240215-U

Order filed July 3, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | Appeal No. 3-24-0215 |
| v. | ) ) | Circuit No. 24-CF-581 |
| MATTHEW JOEL CONTRERAS, | ) ) ) | Honorable Leah M. Bendik, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BRENNAN delivered the judgment of the court.
Justice Albrecht concurred in the judgment.
Presiding Justice McDade dissented.

_____

**ORDER**

¶ 1     *Held*:  The circuit court did not abuse its discretion in granting the State's verified petition to deny pretrial release.

¶ 2     Defendant, Matthew Joel Contreras, appeals from the circuit court's granting of the State's

verified petition to deny pretrial release. For the reasons set forth below, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4        Defendant was charged on March 9, 2024, with two counts of domestic battery (Class 4) (720 ILCS 5/12-3.2(a)(2) (West 2022)). Defendant was subsequently indicted on the charges. The State filed a verified petition to deny pretrial release, alleging, *inter alia*, defendant was charged with domestic battery and his release posed a real and present threat to the safety of any person, persons, or the community under section 110-6.1(a)(4) of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-6.1(a)(4) (West 2022)).

¶ 5        The factual basis in the petition provided that on March 9, 2024, officers responded to a residence for the report of a domestic violence. The victim reported that she and defendant had been dating for several months. The previous evening, "[t]hey got into an argument because he wanted her to sign something saying his dad rapes her so that he could get money from his dad." The verbal argument turned physical when he punched her in the face at least twice. She was able to get away and went into the shower. Defendant confronted her while she was showering and "started hitting her on her head with a mop while she tried to cover her head." Officers spoke with defendant, who admitted that he and the victim got into an argument when she refused to sign the paper. However, he denied any physical contact occurred and said the fight was only verbal. Officers observed bruising to both of the victim's eyes and lacerations on both cheeks. The petition also alleged that defendant had a previous conviction for aggravated domestic battery. A pretrial risk assessment indicated defendant was a moderate risk.

¶ 6        A hearing was held on the petition on March 10, 2024. In addition to the factual basis, the State informed that, "according to the supplemental domestic violence report, there have been threats, even with a weapon, to kill the victim, that this abuse has taken place in front of children, and DCFS has been contacted." The State argued that GPS monitoring and "stay-away orders" would not prevent defendant from committing a similar offense and stated, "there is a prior felony

aggravated domestic battery, strangulation, for which the Defendant received probation." Defense counsel argued that defendant did not cause severe injuries to the victim. Counsel also mentioned the domestic violence report, stating that the victim did not indicate that defendant had access to firearms. While counsel noted defendant's previous domestic battery, she stated that the victim in that case was a different victim. Counsel stated defendant could make arrangements to stay with a friend or his father so "there's no fear that he would be returning to the residence he shares with the complaining witness."

¶ 7 The court granted the State's petition finding the State met its burden by clear and convincing evidence. In doing so, the court noted the proffer alleged that defendant both punched the victim and hit her with a mop stating, "That may not be a traditional weapon, but it certainly was an item used to increase and inflict injury on the victim here." The court also noted that defendant had a past aggravated domestic battery involving strangulation. The court stated,

> "I have considered the fact that the Defendant has asserted that there is the possibility of G.P.S. or home confinement. However, knowing where the Defendant is located is not enough to deter the type of danger posed in this case, and how quickly it escalated to quite a violent interaction. I do not think that home confinement or G.P.S. or any condition or combination of conditions set forth in the safety act could mitigate the real and present threat to the safety of any person or persons in the community."

¶ 8                                    II. ANALYSIS

¶ 9 On appeal, defendant solely contends that the State did not prove that the threat he posed could not be mitigated by conditions. We consider factual findings for the manifest weight of the evidence, but the ultimate decision to grant or deny the State's petition to detain is considered for

3

an abuse of discretion. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. Under either standard, we consider whether the court's determination is arbitrary or unreasonable. *Id.*; see also *People v. Horne*, 2023 IL App (2d) 230382, ¶ 19.

¶ 10        Everyone charged with an offense is eligible for pretrial release, which may only be denied in certain situations. 725 ILCS 5/110-2(a), 110-6.1 (West 2022). The State must file a verified petition requesting the denial of pretrial release. *Id.* § 110-6.1. The State then has the burden of proving by clear and convincing evidence (1) the proof is evident or presumption great that defendant committed a detainable offense, (2) defendant poses a real and present threat to any person, persons, or the community or is a flight risk, and (3) no conditions could mitigate this threat or risk of flight. *Id.* § 110-6.1(a), (e).

¶ 11        At the outset, we note that both parties relied on the supplemental domestic violence report in their arguments at the hearing. However, defendant did not include the report in the record on appeal. Any doubts that arise from the incompleteness of the record are resolved against the appellant. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984). Therefore, to the extent defendant seeks to challenge what he considers the "vague unverified comments" in the report, he cannot do so where he has not provided us with the report on appeal, and we must take the record as provided to us.

¶ 12        Here, we find the State proved by clear and convincing evidence that no conditions were available to mitigate defendant's dangerousness. The State noted that GPS monitoring and stay-away orders would not prevent defendant from committing offenses like the one at issue. Moreover, the State indicated that, according to the supplemental domestic violence report, defendant had previously threatened to kill the victim and did so with a weapon in front of children. It was not against the manifest weight of the evidence for the court to find that "knowing where

4

the Defendant is located is not enough to deter the type of danger posed in this case, and how quickly it escalated to quite a violent interaction" and that no conditions would mitigate the threat defendant posed. Therefore, the court did not abuse its discretion in granting the State's petition.

¶ 13                                  III. CONCLUSION

¶ 14        The judgment of the circuit court of Du Page County is affirmed.

¶ 15        Affirmed.

¶ 16        PRESIDING JUSTICE McDADE, dissenting:

¶ 17        I dissent from the majority's decision that affirms the circuit court's decision to grant the State's petition to deny pretrial release.

¶ 18        The State's verified petition to deny pretrial release in this case checked a box indicating that pretrial release should be denied because "[t]he defendant is charged with domestic battery or aggravated domestic battery under Section 12-3.2 or 12-3.3 of the Criminal Code of 2012 and it is alleged that the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community. *See* 725 ILCS 5/110-6.1(a)(4)." The State did not list anything in the space for "[a]dditional grounds upon which the defendant should be denied pretrial release." The petition also included a brief, two-paragraph synopsis of the factual basis for the petition, as well as the following sentence regarding Contreras' criminal history: "2017 Aggravated Domestic Battery (strangulation) – probation." The petition then concluded, "for the reasons stated above, and based upon the proffer the People request to make during the hearing on this petition pursuant to 725 ILCS 5/110-6.1(f)(2), the People pray that this Honorable Court deny the defendant pretrial release."

¶ 19        What follows is the State's entire argument from the pretrial-detention hearing:

5

"Thank you, Judge. We would be proceeding by way of proffer. Your Honor has had an opportunity to review the State's written verified petition to deny pretrial release, which we would largely be relying on for purposes of this hearing.

Of note, the Defendant appears to have attempted to engage the victim in some sort of extortion scheme, whereby she claimed that she was raped by his father. This was in an effort to get money.

She was unwilling to participate in said scheme, and so what happened? The Defendant just lost it, and started beating her. The Defendant denied any physical contact when officers arrived. However, they did observe lacerations and bruising on both of the victim's cheeks, contradicting the Defendant's denial.

So I believe the proof is evident. I believe the dangerousness is evident. And, again, Judge, according to the supplemental domestic violence report, there have been threats, even with a weapon, to kill the victim, that this abuse has taken place in front of children, and DCFS has been contacted.

And, again, Judge, and I apologize for repeating myself kind of *ad nauseum* here, but once again, your admonishments, your court orders only have the effect that the victim gives them. They only have the weight -- excuse me, that the Defendant gives them. You can admonish him, you can load him up with all types of bracelets and stay-away orders, and what have you. If he loses it, that is going to mean nothing to him. And that is going to mean another bruised and bloody victim, and that is what we are seeking to avoid with detention here.

6

We are respectfully asking your Honor to grant our petition. Thank you, Judge. I apologize, I would note that there is a prior felony aggravated domestic battery, strangulation, for which the Defendant received probation. So, again, this is not his first rodeo, as it were, and I think that speaks to his predilection for violence. Because that took place in Kane County, I cannot confirm or deny to your Honor, and I would not proffer, that it is the same victim. But thank you, Judge."

¶ 20   In response, defense counsel argued, in part, that

"the State is saying that, you know, the conditions are only worth the weight that my client gives them, and they have insinuated that there are no conditions that could mitigate any threat he poses, that he would not comply with court orders. However, the State has not presented any evidence -- there's nothing in my client's history, specific, articulable facts of this case that would indicate that my client would not comply with any orders of the Court."

Defense counsel then argued that enforcing a no-contact order, placing Contreras "on pretrial services," imposing an order requiring he seek and maintain full-time employment, imposing global-positioning-system monitoring, and requiring home confinement would be sufficient to mitigate any risk he posed.

¶ 21   The State declined to respond to defense counsel's argument.

¶ 22   The circuit court then announced its decision. In part, the court stated the following:

"I have considered the fact that the Defendant has asserted that there is the possibility of G.P.S. or home confinement. However, knowing where the Defendant is located is not enough to deter the type of danger posed in this case,

7

the way I hear the specific facts of this case, and how quickly it escalated to quite a violent interaction. I do not think that home confinement or G.P.S. or any condition or combination of conditions set forth in the safety act could mitigate the real and present threat to the safety of any person or persons in the community.

I also note that I reviewed the risk assessment here. The risk assessment does put him in the moderate category, which is another fact that I weighed in coming to this conclusion. Therefore, the State's petition to detain is granted."

¶ 23    The contents of the State's petition and what in fact transpired at the hearing on the petition are significant for several reasons. First, it is indisputable that the State did not address the "conditions" element contained in section 110-6.1(e)(3) (725 ILCS 5/110-6.1(e)(3) (West 2022)) in its petition. Section 110-6.1(d)(1) requires the following regarding the petition's contents:

"The petition shall be verified by the State and shall state the grounds upon which it contends the defendant should be denied pretrial release, including the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts or flight risk, as appropriate." *Id.* § 110-6.1(d)(1).

Presumably, because section 110-6.1(e)(3) contains the "conditions" element that the State must prove by clear and convincing evidence at the hearing (*id.* § 110.6.1(e)(3)), that element is part of the "grounds" for the State's petition to deny pretrial release (*id.* § 110-6.1(d)(1)). Here, nothing in the State's petition referred to the "conditions" element in any way.

¶ 24        Second, and more importantly, it is indisputable that the State did not address the "conditions" element at the hearing, which requires the State to prove by clear and convincing evidence that

> "no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate (i) the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, for offenses listed in paragraphs (1) through (7) of subsection (a), or (ii) the defendant's willful flight for offenses listed in paragraph (8) of subsection (a)" (*id.* § 110-6.1(e)(3)).

Nothing in the State's argument at the hearing can reasonably be construed as addressing what section 110-6.1(e)(3) explicitly requires.

¶ 25        Third, the majority misleadingly characterizes the State's argument when it mentions '[t]he State argued that GPS monitoring and 'stay-away orders' would not prevent defendant from committing a similar offense." *Supra* ¶ 6. The State's "argument" had nothing to do with "the specific articulable facts of the case" (725 ILCS 5/110-6.1(e)(3) (West 2022)), as required by the statutory scheme. Rather, the State's reference to "bracelets and stay-away orders" was simply a part of a generalized argument that court orders only work when a defendant follows them. The State presented no evidence whatsoever to show that Contreras would not follow any court orders. Equally problematic is the majority's subsequent statement, used as support for affirming the circuit court's decision, that "[t]he State noted that GPS monitoring and stay-away orders would not prevent defendant from committing offenses like the one at issue." *Supra* ¶ 12. What the State "presented" here was not evidence. At best, it was speculation.

¶ 26       Fourth, the circuit court's oral ruling indicates that it considered only what the *defense* presented regarding conditions. This is significant because the defense has no burden at the hearing on the State's petition to deny pretrial release. The burden of proof at the hearing is clearly on the State and the State alone (725 ILCS 5/110-6.1(e) (West 2022)). What is often occurring at these hearings is exactly what occurred here—the State does not address the "conditions" element from section 110-6.1(e)(3) and then defense counsel, in an attempt merely to advocate on behalf of the client, ends up suggesting certain conditions that would be appropriate in the case. Then, even if the State does respond to defense counsel's suggestions (again, the State did not do so here), the circuit court ends up specifically addressing those suggestions from defense counsel (as the court did here). Courts must be vigilant to avoid anything that would appear to shift the burden of proof to the defendant at pretrial-detention hearings.

¶ 27       The State did not meet its burden of proof on the "conditions" element in this case. The statutory presumption in favor of release was not rebutted. Despite the horrific nature of Contreras' alleged crimes, he should have been released, and the responsibility for that outcome would fall solely upon the State because of its noncompliance with the statute's requirements.

¶ 28       For the foregoing reasons, I dissent.