**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 240429-U

Order filed October 9, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-24-0429 Circuit No. 23-CF-533 |
| BRIAN J. SMITH, | ) ) ) | Honorable Kathy S. Bradshaw Elliott, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE DAVENPORT delivered the judgment of the court.
Justice Hettel concurred in the judgment.
Presiding Justice McDade dissented.

_____

**ORDER**

¶ 1     *Held*:  The circuit court did not abuse its discretion in granting the State's verified petition to detain defendant.

¶ 2     Defendant, Brian J. Smith, appeals the court's order denying pretrial release. We affirm.

¶ 3                                   I. BACKGROUND

¶ 4     On July 28, 2023, the State charged defendant with criminal sexual abuse (720 ILCS 5/11-1.50(a)(2) (West 2022)). His bond was set at $500,000, but he remained in custody. On June 10,

2024, defendant filed a motion for reconsideration of pretrial release conditions, wherein he asked the court to release him from custody with any conditions it deemed necessary. In response, the State filed a verified petition to deny pretrial release, alleging defendant was charged with a forcible felony and his release posed a real and present threat to the safety of any person, persons, or the community under section 110-6.1(a)(1.5) of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-6.1(a)(1.5) (West 2022)).

¶ 5        The factual basis for the petition provided that A.R. met with officers on June 5, 2023, at the police station to report a sexual offense. She told them that two days earlier, she was babysitting by herself at Sebrina Leadingham's home and fell asleep at approximately 12 a.m. She awoke around 4:30 a.m. when defendant rubbed his hand on the outside of her shorts over her vagina. Defendant was living with Leadingham at the time and was the father of one of her children. When A.R. realized what was happening, she slapped defendant's hand and told him not to touch her. Defendant replied, "I'm going to play with your p***." A.R. told defendant not to touch her and then received a phone call from Leadingham. A.R. gave the cell phone to defendant and left the room. Shortly after, A.R. returned and defendant again touched the outside of her shorts over her vagina. A.R. ran into the bathroom to hide and wait for defendant to leave. At 6 a.m., A.R. contacted her family to pick up her and the children. The family members who picked up A.R. noticed she was in shock and had been crying.

¶ 6        A hearing was held on June 13, 2024. Defendant elected to proceed *pro se* with standby counsel. The State provided the factual basis and noted that defendant had a criminal history. Defendant asked the court to strike the State's use of his criminal history because the State failed to tender him a copy of the history it intended to use as evidence. The court continued the matter.

¶ 7        The hearing reconvened on June 18, 2024. The State reported defendant was previously convicted of robbery, aggravated criminal sexual abuse, escape, failure to register as a sex offender, criminal trespass to a residence, obstructing identification, manufacture and delivery of a lookalike substance, and manufacture and delivery of a controlled substance. The State argued defendant was a danger to the community in that he had previously been convicted of a sex offense and reoffended with a different victim. The State also argued defendant's behavior in the courtroom demonstrated he would not comply with conditions of release as he raised his voice to the court and failed to comply with the court's direction during the proceedings. Defendant argued he did not have a history of violence, he did not have any warrants for failure to appear, he had resided in Kankakee for his entire life, and his children lived in Kankakee.

¶ 8        The court granted the State's petition, finding by clear and convincing evidence that (1) the presumption was great that defendant committed the detainable offense of criminal sexual abuse, (2) defendant posed a real and present threat to the safety of A.R., and (3) there were no conditions or combination of conditions that would mitigate the real and present threat. The court noted the specific facts of the case and defendant's criminal history. As to defendant's demeanor during the proceedings, the court stated, "it just seems like you're argumentative and you have a reason for doing everything you're doing." The court concluded defendant would not follow any conditions it could set. Defendant filed a motion for relief, which the court denied on June 20, 2024. Defendant appeals.

¶ 9                                                    II. ANALYSIS

¶ 10       On appeal, defendant contends the State's petition to deny pretrial release was untimely as it was filed nearly a year after he first appeared before the court (see *id.* § 110-6.1(c)(1)). We have

3

already considered this issue in *People v. Kurzeja*, 2023 IL App (3d) 230434, ¶¶ 14-15. In *Kurzeja*, we stated that defendants who were arrested prior to the implementation of bail reform

> "can either 'elect to stay in detention until such time as the previously set monetary security may be paid' (*People v. Rios*, 2023 IL App (5th) 230724, ¶ 16), or file a motion to modify. If defendant chooses the latter option, the State may file a responding petition. '[O]nce a defendant elects "to have their pretrial conditions reviewed anew" (*id.*), the matter returns to the proverbial square one, where the defendant may argue for the most lenient pretrial release conditions, and the State may make competing arguments.' *People v. Jones*, 2023 IL App (4th) 230837, ¶ 23. 'This is analogous to when a change in the sentencing law occurs after a defendant has committed the offense—the defendant is given the opportunity to choose to be sentenced under that law that existed at the time of the offense or the newly enacted law.' *Rios*, 2023 IL App (5th) 230724, ¶ 17." *Id.* ¶ 14.

Accordingly, we held that the State was permitted to file a responsive petition if defendant chose to file a motion to reopen the conditions of release. *Id.* ¶ 15. We adopt this reasoning here and hold that the State was permitted to file a petition to detain in response to defendant's motion seeking pretrial release. Therefore, the State's petition was timely.

¶ 11    Defendant further argues that the court erred in finding that there were no conditions to mitigate his dangerousness. We consider factual findings for the manifest weight of the evidence, but the ultimate decision to grant or deny the State's petition to detain is considered for an abuse of discretion. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. Under either standard, we consider whether the court's determination is arbitrary or unreasonable. *Id.*; see *People v. Horne*, 2023 IL App (2d) 230382, ¶ 19.

¶ 12    Everyone charged with an offense is eligible for pretrial release, which may only be denied in certain situations. 725 ILCS 5/110-2(a), 110-6.1 (West 2022). The State must file a verified petition requesting the denial of pretrial release. *Id.* § 110-6.1. The State then has the burden of proving by clear and convincing evidence (1) the proof is evident or presumption great that defendant committed a detainable offense, (2) defendant poses a real and present threat to any person, persons, or the community or is a flight risk, and (3) no conditions could mitigate this threat or risk of flight. *Id.* § 110-6.1(e). When determining a defendant's dangerousness and the conditions of release, the statute includes a nonexhaustive list of factors the court can consider. *Id.* §§ 110-6.1(g), 110-5.

¶ 13    Here, the evidence presented indicated that defendant touched A.R.'s shorts over her vagina while she was sleeping. After A.R. slapped defendant's hand and told him not to touch her, defendant said, "I'm going to play with your p***" and touched her again in the same manner. Defendant had an extensive criminal history, which included robbery, aggravated criminal sexual abuse, escape, failure to register as a sex offender, criminal trespass to a residence, obstructing identification, manufacture and delivery of a lookalike substance, and manufacture and delivery of a controlled substance. Defendant posed a threat to A.R. and the community. The statute provides factors the court can consider when considering the conditions of release, and the State presented evidence of such factors, including the nature and circumstances of the offense and the history and characteristics of defendant. See *id.* § 110-5. Defendant had committed a similar prior offense and had a history of failing to register as a sex offender, thus showing that he may not follow edicts of the court. It was not against the manifest weight of the evidence for the court to find that any conditions would prevent defendant from continuing to be a threat. Therefore, the court did not abuse its discretion in granting the State's petition.

¶ 14                          III. CONCLUSION

¶ 15          The judgment of the circuit court of Kankakee County is affirmed.

¶ 16          Affirmed.

¶ 17          PRESIDING JUSTICE McDADE, dissenting:

¶ 18          I dissent from the majority's order that affirms the circuit court's decision to grant the State's petition to deny pretrial release.

¶ 19          Like so many other pretrial-release cases that have been previously adjudicated by this court, this case presents another instance in which the State presented absolutely no evidence whatsoever regarding the "conditions" element of section 110-6.1(e)(3) of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-6.1(e)(3) (West 2022)), part of what has been colloquially referred to as the Pretrial Fairness Act. Once again, a panel of this court has chosen to excuse the State's explicit burden under section 110-6.1(e)(3) of proving, by clear and convincing evidence, that

> "no condition or combination of conditions set forth in subsection (b) if Section
> 110-10 of this Article can mitigate (i) the real and present threat to the safety of any
> person or persons or the community, based on the specific, articulable facts of the
> case, for offense listed in paragraphs (1) through (7) of subsection (a), or (ii) the
> defendant's willful flight for offense listed in paragraph (8) of subsection (a)." *Id.*

¶ 20          I have criticized my colleagues' decisions many times in the past that have excused the State's burden under the "conditions" element. See, *e.g.*, *People v. Hamilton*, 2023 IL App (3d) 230464-U ¶¶ 10-15 (McDade, J., dissenting); *People v. Ussery*, 2023 IL App (3d) 230494-U, ¶¶ 15-20 (McDade, J., dissenting); *People v. Miller*, 2023 IL App (3d) 230488-U, ¶¶ 17-22 (McDade, J., dissenting); *People v. Sanders*, 2024 IL App (3d) 230504-U, ¶¶ 16-23 (McDade, J.,

6

dissenting); *People v. Devine*, 2024 IL App (3d) 230526-U, ¶¶ 13-18 (McDade, P.J., dissenting); *People v. Walker*, 2024 IL App (3d) 230580-U, ¶¶ 14-16 (McDade, P.J., dissenting); *People v. James*, 2024 IL App (3d) 230620-U, ¶¶ 17-21 (McDade, P.J., dissenting); *People v. Martinez*, 2024 IL App (3d) 230629-U, ¶¶ 15-20 (McDade, P.J., dissenting); *People v. Marsh*, 2024 IL App (3d) 230643-U, ¶¶ 15-20 (McDade, P.J., dissenting); *People v. Kling*, 2024 IL App (3d) 230684-U, ¶¶ 14-17 (McDade, P.J., dissenting); *People v. Jorgenson*, 2024 IL App (3d) 230741-U, ¶¶ 14-17 (McDade, P.J., dissenting); *People v. Smith*, 2024 IL App (3d) 230785-U, ¶¶ 14-18 (McDade, P.J., dissenting); *People v. Higgins*, 2024 IL App (3d) 240038-U, ¶¶ 10-15 (McDade, P.J., dissenting); *People v. Mikolaitis*, 2024 IL App (3d) 230791, ¶¶ 22-29 (McDade, P.J., dissenting), *appeal allowed*, No. 130693 (Ill. June 12, 2024); *People v. Faint*, 2024 IL App (3d) 240057-U, ¶¶ 16-29 (McDade, P.J., dissenting); *People v. Faint*, 2024 IL App (3d) 240058-U, ¶¶ 15-26 (McDade, P.J., dissenting); *People v. Young*, 2024 IL App (3d) 240046, ¶¶ 14-26 (McDade, P.J., dissenting); *People v. Paige*, 2024 IL App (3d) 240054-U, ¶¶ 13-18 (McDade, P.J., dissenting); *People v. Thompson*, 2024 IL App (3d) 240160-U, ¶¶ 28-31 (McDade, P.J., dissenting); *People v. Monchunski*, 2024 IL App (3d) 240174-U, ¶¶ 14-17 (McDade, P.J., dissenting); *People v. Johnson*, 2024 IL App (3d) 240180, ¶¶ 21-38 (McDade, P.J., dissenting); *People v. Contreras*, 2024 IL App (3d) 240215-U, ¶¶ 16-28 (McDade, P.J., dissenting); *People v. Castillo*, 2024 IL App (3d) 240294-U, ¶¶ 17-21 (McDade, P.J., dissenting); *People v. Castillo*, 2024 IL App (3d) 240295-U, ¶¶ 17-21 (McDade, P.J., dissenting).

¶ 21    In one case, two of my colleagues agreed that the State's failure to present evidence under the "conditions" element was fatal to the circuit court's decision to grant the State's petition to deny pretrial release. *People v. Redmond*, 2024 IL App (3d) 230531-U, ¶ 6.

¶ 22    I am not alone in my stance regarding the "conditions" element; cases from other districts of the appellate court have similarly interpreted section 110-6.1(e)(3). See, *e.g.*, *People v. White*, 2024 IL App (1st) 232245; *People v. Castillo*, 2024 IL App (1st) 232315; *People v. Grosey*, 2024 IL App (2d) 240391-U; *People v. Martinez-Ortiz*, 2024 IL App (2d) 240102-U; *People v. Stock*, 2023 IL App (1st) 231753.

¶ 23    The majority attempts to support its excusal of the State's burden under the "conditions" element by citing only to section 110-5 of the Code (725 ILCS 5/110-5 (West 2022)) and concluding that section "provides factors the court can consider when considering the conditions of release." *Supra* ¶ 13. The majority then states that "the State presented evidence of such factors, including the nature and circumstances of the offense and the history and characteristics of defendant." *Id.* The majority's interpretation of the statutory scheme and the evidence presented in this case is profoundly misguided.

¶ 24    As I have previously stated, section 110-5 cannot be used as a basis to excuse the State's failure to meet its burden under the "conditions" element:

"it is important in this case to differentiate between sections 110-5 and 110-10 of the Code. Section 110-5 provides guidance for the *court* when considering whether conditions exist that would, in part, 'reasonably ensure the appearance of a defendant as required or the safety of any other person or the community.' 725 ILCS 5/110-5(a) (West Supp. 2023). That section provides a nonexhaustive list of *factors* that are relevant to the court's decision, including 'the nature and circumstances of the offense charged' (*id.* § 110-5(a)(1)) and 'the history and characteristics of the defendant' (*id.* § 110-5(a)(3)). Section 110-5 also directs the court to take specific actions in certain circumstances. See *id.* § 110-5(c) (directing

8

the court, if a defendant is to be admitted to pretrial release, to impose any conditions mandated by section 110-10 of the Code).

In contrast to section 110-5, section 110-10 addresses the actual *conditions* that can be imposed on pretrial release. *Id.* § 110-10. For example, section 110-10(a) addresses conditions that must be imposed if a defendant is admitted to pretrial release. *Id.* § 110-10(a). Section 110-10(b) includes a nonexhaustive list of conditions that can be imposed, such as requiring a defendant to obtain leave of court before departing the state (*id.* § 110-10(b)(0.05)) and prohibiting a defendant from possessing firearms or other dangerous weapons and from going to certain geographic areas or premises (*id.* § 110-10(b)(2), (4)).

The distinction between sections 110-5 and 110-10 is important because the State's explicit burden under section 110-6.1(e)(3) of the Code is that it must establish by clear and convincing evidence, in relevant part, that 'no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can mitigate' either the safety risk the defendant poses or the risk of his or her 'willful flight,' depending on the basis for the State's detention request. *Id.* § 110-6.1(e)(3). It would seem elementary, then, that for the State to meet its legislatively mandated burden under section 110-6.1(e)(3), it would address at a very minimum the conditions explicitly listed in section 110-10(b). See, *e.g.*, *People v. Stock*, 2023 IL App (1st) 231753, ¶¶ 15-19. Of course, not every conceivable condition needs to be addressed by the State to meet its burden under section 110-6.1(e)(3). But the language of that section shows that the legislature contemplated what conditions would arguably be applicable and mandated that the

9

State present evidence and argument on them. The plain language of section 110-6.1(e)(3) makes it clear that the State *cannot* meet its burden under section 110-6.1(e)(3) by merely presenting evidence relevant to the factors the court is required to consider under section 110-5 when reaching its ultimate pretrial release decision. See 725 ILCS 5/110 6.1(e)(3) (West 2022)." *Mikolaitis*, 2024 IL App (3d) 230791, ¶¶ 25-27 (McDade, P.J., dissenting), *appeal allowed*, No. 130693 (Ill. June 12, 2024).

¶ 25    In this case, the State did not present any evidence on the "conditions" element at the detention hearing. Any evidence it may have presented that related to factors under section 110-5 is irrelevant to whether the State met its burden of proof under section 110-6.1(e)(3). This case should be reversed and remanded for further proceedings in which Smith should be admitted to pretrial release, despite the terrible nature of his alleged crime, because the State failed to meet its burden of proof under section 110-6.1(e)(3).